JOHN G. STEWART, JR. vs. WILLIAM L. PUTNAM & another, trustees.

Suffolk. November 13, 1878; August 4. — September 18, 1879

The question whether a written agreement, executed by one of two trustees under the will of the lessor, and by the lessee, is effectual to terminate a written lease, is not open to the trustees, on a report which states that it was admitted at the trial that the trustees and the lessee made the agreement.

G., the lessee of an entire building, who was bound to make outside repairs, and who had the right to terminate the lease at a future day, gave notice to P., the lessor, of his intention to terminate it, and the parties thereupon entered into an agreement, three months before the lease would under the notice have expired, which provided that the lease should terminate at once; that G. assigned to P. all sub-leases of any part of the leased premises; that G. "is made agent" for P. "to lease and collect rents and have general care and charge" of the building for one year and three months, to furnish porterage, water, steam heat and gas, and make inside repairs, but not to contract liabilities in behalf of P.; that for his services "as such agent," during the first three months, he should receive no compensation, and should guarantee that P. should receive during that time the same net rent, excluding taxes, as though the lease was not terminated; that for the year, after the three months, P. should receive the gross rents, and G. should receive a certain percentage of the rents actually collected, and a certain sum in addition, in full for expense of water, gas, steam heat, porterage and inside repairs; and that G. was not to be bound to repair damages caused by fire, extraordinary casualty, defective construction of building, or by want of outside repairs, nor to furnish gas or janitor within any rooms or offices leased. *Held*, that P. was not liable for an injury, during the three months, caused by the negligence of a servant of G. in leaving open a coal-hole opening from the sidewalk in front of the building to the cellar.

TORT for personal injuries sustained by the plaintiff by reason of the alleged negligence of the defendants in leaving a coal-hole uncovered in the sidewalk in front of a building on Exchange Place in Boston, whereby the plaintiff fell into the hole and was injured. Trial in this court, before *Morton*, J., who reported the case for the determination of the full court in substance as follows:

It was admitted that Exchange Place, including the sidewalk, was a public highway; that, at the time of the accident, the defendants were seised in fee of the building and the land on which it stood, as trustees under the will of William S. Perry, deceased that on January 20, 1872, Perry, who then owned the building, leased it for the term of ten years from that date to Elijah D. Goodrich, the lessee to make all repairs, outside as well as inside,

at his own cost, and to have the right to surrender the lease at the end of the first five years of the term, by giving six months notice in writing; and that on October 1, 1876, the defendants and Goodrich made a contract under seal, which was in force when the plaintiff was injured. Annexed to the report was a copy of this contract, signed by one of the trustees and by Goodrich, which, after reciting that Goodrich was entitled to terminate the lease on January 1, 1877, by giving notice thereof, and had given notice, which had been accepted by the trustees, so that the lease would thereby terminate on January 1, 1877, proceeded as follows:

" It is agreed: 1st. Said lease shall terminate and is hereby terminated this day in lieu of said first day of January, 1877, with the same effect, except as to time, as though it had termi nated on said first day of January.

" 2d. Said Goodrich releases and discharges to said trustees all improvements and property put by him upon the leased premises, and all claims whatever against either said trustees or said Perry or his estate arising from or concerning said leased premises.

" 3d. Said Goodrich assigns to said trustees all sub-leases of any part of said leased premises, whether verbal or in writing, and herewith delivers the latter to said trustees.

" 4th. Said trustees will pay the taxes on leased premises for the current year without cost to said Goodrich and release him from all claims therefor, provided said Goodrich does all the things herein provided, and agreed by him to be done.

" 5th. Said Goodrich is made agent for said trustees to lease and collect rents and have general care and charge of said premises for the space of one year and three months from date, and will, at his own expense, furnish porterage, water, steam heat and gas for the same, and make all inside repairs and keep the same in good order, except as hereinafter provided, but is not authorized to contract any liabilities in behalf of said trustees.

" For his services as such agent, until January 1st, 1877, he is to receive no compensation, and he guarantees that said trustees shall receive to and including January 1st, 1877, the same net rent, including interest on betterments and excluding taxes, as though said lease were not terminated until January 1st, 1877,

the same to be payable at the same time as provided in said lease.

" From January 1st, 1877, to January 1st, 1878, said trustees are to receive the gross rents of said premises, and for services and expenses of said Goodrich during said period, said Goodrich shall be paid as follows : Ten per cent of the rents actually collected, being for his services, and six hundred dollars, being in full for expense of water, gas, steam heat, porterage and inside repairs. Said six hundred dollars shall be paid in monthly cash instalments, but said percentage may be withheld by said trustees till all sums now or hereafter due from said Goodrich to said trustees are paid.

" It is understood that said Goodrich is not bound to repair damages caused by fire, extraordinary casualty, defective construction of the building, or by want of outside repairs, nor to furnish gas or janitor within any rooms or offices leased."

It was in evidence, for the plaintiff, that on November 23, 1876, at the time the injuries were received, Goodrich, under this contract, had the general care and control of the building, including the cellar under the building and under the sidewalk, and of the coal-hole, and that no other person had any occupancy, care or control of the cellar or coal-hole; that Goodrich had in his employ Lewis A. Jones, who took care of the offices in the building, both those leased and those vacant, the entries, outside doors, cellar and sidewalk; that the persons holding leases of offices had the right to use the steam heat for warming their offices ; that Goodrich had purchased coal to be used in producing the steam heat of a coal-dealer; that for the purpose of putting the coal into the cellar, Jones went into the cellar, unfastened the cover of the coal-hole and partly raised it up, when the men, who had come to deliver the coal, removed the cover and left the hole open and unprotected ; that the plaintiff, walking on the street and using due care, fell into the open coal-hole and received the alleged injuries.

At the close of the plaintiff's case, the judge ruled, as matter of law, that the defendants were not liable in this action ; and ordered a verdict accordingly. If the ruling was right, judgment was to be entered on the verdict; otherwise, a new trial to be ordered.

The case was argued at the bar in November 1878, by *G. A Somerby & F. D. Ely*, for the plaintiff, and by *R. D. Smith & C. T. Russell, Jr.*, for the defendants, and submitted on briefs to all the judges in August 1879.

SOULE, J. This case depends on the construction and effect of the agreement of October 1, 1876, which is made a part of the report. Before it was executed, Elijah D. Goodrich was in possession of the premises owned by the defendants, under a lease for years, and had the entire control thereof. He, and not the landlord, was bound, as between himself and the public, so far to keep the buildings and structures abutting on the highway in repair that the way should be safe for travellers. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Shipley* v. *Fifty Associates*, 101 Mass. 251. *Leonard* v. *Storer*, 115 Mass. 86. The question, therefore, arises, whether the agreement of October 1 made such a change in the relations of the parties to the premises as to shift the responsibility from Goodrich to the defendants.

It is argued by the defendants that that agreement is void because it was signed by only one of the two trustees. This position, however, is not open to the defendants, because the report shows that they admitted at the trial that they made the agreement.

A majority of the court are of opinion that, under this agreement, for the three months ending with January 1, 1877, Goodrich had the right to lease all vacant parts of the premises, and to receive the rents thereof, as well as the rents of the parts already let, to his own use; and that the defendants had no authority in nor control over any part of the building, for any purpose. The old lease was terminated, and the existing subleases were assigned to them; but by the same instrument by which this was effected, the rents for the parts leased, with the right to lease the rest and receive the rents, were granted to the original lessee, he undertaking to pay such rent therefor that, at the end of the three months, the defendants should have received for the whole year the same net rent as if the lease had not been terminated, less the amount of taxes for the year. The only change wrought by the agreement, for the three months, was that Goodrich was released from the duty to pay the taxes, and

from the duty to make outside repairs as called for by the lease. But he continued in the same complete occupancy and control of the premises as before. The agreement amounted practically, though not technically, to a lease to Goodrich, for three months, of that part of the property not let to tenants, and of the reversion of that part which was let. *Fiske* v. *Framingham Manuf. Co.* 14 Pick. 491. *Dutton* v. *Gerrish*, 9 Cush. 89, 93. The fact that he is termed the agent of the defendants is not enough to do away with the legal result of the stipulations of the agreement.

This being the effect of the agreement of October 1, 1876, and the injuries of the plaintiff having been received in consequence of a negligent use of the coal-hole in the sidewalk connected with the premises, during the three months for which Goodrich, and not the defendants, had control of the premises, the case is brought within the principle of the cases first above cited.

It differs from the case of *Tarry* v. *Ashton*, 1 Q. B. D. 314, where the question was whether the person, who maintained in front of his dwelling-house a hanging lamp which projected over the highway, or the contractor who imperfectly repaired it several months before it fell, was responsible for the injury sustained by the plaintiff on whom it fell. It was there decided that the occupant of the house was liable, on the ground that one who maintains a lamp thus projecting, for his own convenience, is bound so to maintain it that it will not be dangerous to passers by.

Nor is it a case where the owner or occupant of land contracts for the doing of that which is certain to be attended with injurious consequences, if they are not specially guarded against, and is liable if they are not prevented, no matter by whose fault the omission occurs, as in *Bower* v. *Peate*, 1 Q. B. D. 321; *Homan* v. *Stanley*, 66 Penn. St. 464; *Harrison* v. *Collins*, 86 Penn. St. 153.

It is merely a case where the occupant of premises, having the absolute control of them, and having employed a servant to do certain work about them, is liable for the consequences of the servant's negligence. *Judgment on the verdict.*