LEWIS W. HUDSON, as Administrator, etc., Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURG RAILROAD COMPANY, Appellant.

While the determination of the General Term upon all questions as to the weight of evidence is final, and not reviewable here, where there is no conflict in the evidence, or that which appears to be in conflict is but a mere scintilla, or is met by well-known and scientific facts about which there is no conflict, this court may review the decision, if contrary to the evidence, and reverse it.

In an action to recover damages for alleged negligence causing the death of H., plaintiff's intestate, it appeared that he was a fireman on one of defendant's engines. When the train was stopping at a station to take water for the engine the engineer left it in the charge of H. and went into the depot; shortly thereafter the crown sheet of the engine collapsed and the escaping steam inflicted injuries upon H. causing his death. An examination of the engine showed that the crown sheet had been scorched, and this caused the collapse. Plaintiff claimed that the scorching took place at some previous time, and that defendant was negligent in sending the engine out in an imperfect condition. The engineer testified in substance that on arrival at the station there was about six inches of water over the crown sheet. This was determined by trying the gauge cock. Experts, however, testified that the sheet could not scorch or become red hot while covered with water, and that, in their opinion, from its appearance after the accident, which was described and as to which there was no question, it must have been red hot at the time it collapsed, and there was no evidence that the scorching was done at any other time. *Held*, the evidence did not justify a finding that the scorching took place at a time prior to the starting out of the engine, and so did not justify a verdict for plaintiff.

*Hudson* v. *R., W. & O. R. R. Co.* (73 Hun, 467), reversed.

(Argued March 12, 1895; decided March 22, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 21, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. G. Griffin* for appellant. The court erred in refusing to grant motion for a non-suit. (136 N. Y. 77; *Byrnes* v. *N.*

Y., L. E. & W. R. R. Co., 113 id. 251; Ford v. L. S. & M. S. R. R. Co., 117 id. 639; Filbert v. D. & H. C. Co., 121 id. 212; La Croy v. N. Y., L. E. & W. R. R. Co., 132 id. 572.)

John N. Carlisle for respondent. The questions of fact submitted to the jury having been found by them on conflicting evidence, this court will not disturb them. (Berminghoff v. Agricultural Ins. Co., 93 N. Y. 495, 500; Code Civ. Pro. § 1337.) Defendant failed to perform its duty to use reasonable care in the inspection of the engine in question before it turned the same over to plaintiff's intestate. (Hastings v. B. L. Ins. Co., 138 N. Y. 479; Bailey v. R., W. & O. R. R. Co., 139 id. 302; S. S. U. Bank v. Sloan, 135 id. 383; Hart v. Hudson R. R. Co., 80 id. 622.) The master owes a duty to its employees to furnish them with safe machinery, tools and appliances adapted to the work to be done, and to keep them in repair. (Bailey v. R., W. & O. R. R. Co., 139 N. Y. 362; Ellis v. N. Y., L. E. & W. R. R. Co., 95 id. 546; Lansing v. N. Y. C. & H. R. R. R. Co., 49 id. 521; Fuller v. Jewett, 80 id. 46.) If, by the exercise of proper care and inspection, the defendant could have discovered the defect which led to the injury, and failed so to do, it is liable. A master is liable to his servant for an injury caused by defective machinery, the defects in which could have been discovered by the exercise of reasonable care. (Bailey v. R., W. & O. R. R. Co., 139 N. Y. 302; N. P. R. R. Co. v. Herbert, 116 U. S. 642; Ballard v. H. M. Co., 58 Hun, 188–192; Stevenson v. Jewett, 16 id. 210; H. v. T. & P. R. R. Co., 110 U. S. 213; Pantzar v. T. F. I. M. Co., 99 N. Y. 368; Fuller v. Jewett, 80 id. 46; Ford v. R. R. Co., 110 Mass. 241; Durkin v. Sharp, 88 N. Y. 225; Benzing v. Steinway, 101 id. 552; McGovern v. C. V. R. R. Co., 123 id. 280–288.) Where a servant is injured by the negligent performance of an act or duty which the master as such is required to perform, the latter is liable although the act was that of another servant, to whom the performance of the act or duty was intrusted, and this without regard to the

rank or title of the person guilty of the negligence. A master is not relieved from liability in such case by the fact that he has promulgated rules and regulations for the proper performance of the act or duty by his agent, which were disregarded by the latter. (*Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416; *Bailey* v. *R., W. & O. R. R. Co.*, 139 id. 302; *Durkin* v. *Sharp*, 88 id. 225; *Pantzar* v. *T. F. I. M. Co.*, 91 id. 372; *Benzing* v. *Steinway*, 101 id. 552; *McGovern* v. *C. V. R. R. Co.*, 123 id. 288; *Lansing* v. *N. Y. C. & H. R. R. R. Co.*, 49 id. 521–532; *Fuller* v. *Jewett*, 80 id. 46; *Filke* v. *B. & A. R. R. Co.*, 53 id. 549.) While a servant assumes the ordinary risks of his employment, and, as a general rule, such extraordinary risks as he may knowingly and voluntarily see fit to encounter, he does not stand upon the same footing as the master, as respects the matter of care in inspecting and investigating the risks to which he may be exposed. (*Krang* v. *L. I. R. R. Co.*, 123 N. Y. 1–4; 14 Am. & Eng. Ency. of Law, 854; *Mehan* v. *S. B. & N. Y. R. Co.*, 73 N. Y. 585.) The doctrine that a servant cannot recover on account of an accident caused by a defect of which he had knowledge, and the risk of which he voluntarily assumed, does not apply to cases where the defect is caused by the employer's neglect to make proper and reasonable repairs. (*Kaare* v. *T. S. & I. Co.*, 46 N. Y. S. R. 451; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 376; *McGovern* v. *C. V. R. R. Co.*, 123 id. 287; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 552; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206.)

Haight, J. This action was brought to recover damages for causing the death of Harry L. Hudson, the plaintiff's intestate. Hudson was in the employ of the defendant engaged as a fireman on engine No. 103. George H. Grower was the engineer in charge. On the 8th day of October, 1890, at 1.45 P. M. they took the engine in question from the yard in Watertown and started out with a freight train for Oswego. They took water at Watertown, Pierrepont Manor

and Richland.  On arriving at Mexico they stopped at the
water column to again take water.  The engineer then left
the engine in charge of Hudson and went into the depot.  A
few minutes thereafter the crown sheet of the engine col-
lapsed, allowing the steam to escape into the fire box and
blow out through the door thereof, inflicting injuries upon
Hudson from which he shortly thereafter died.  An examina-
tion of the engine, after the accident, disclosed the fact that
the crown sheet had been scorched throughout its entire
length, covering an area of thirty-two inches at the front of
the fire box and gradually diminishing until, at the back end
the scorched area was sixteen inches in width.  The scorched
part was white, of a bluish cast and perfectly clean, having
no soot, or other substance attached to it.  The crown sheet
had been convex, but had reversed its arch and pressed down
into the fire box a distance of seventeen and a half inches, so
as to become concave.  Prior to the accident the crown sheet
had been supported by numerous stay bolts, screwed into the
plate and riveted on the fire box side.  These bolts had drawn
out, leaving holes in the sheet through which the steam had
escaped into the fire box.  The sheet itself, after the collapse,
was extended longitudinally from ten to fourteen inches, and
the holes caused by the withdrawing of the stay bolts had
become elongated.  The engine was nearly new; of first-
class construction, and in other respects was in perfect
condition.

It is conceded by all parties that the accident occurred in
consequence of the scorching of the crown plate.  It is con-
tended on behalf of the plaintiff that the scorching had taken
place at some previous time, and that the defendant was
negligent in sending the engine out upon the road while it was
in that condition.  On behalf of the defendant it is claimed
that the scorching took place at the time of or just preced-
ing the accident.

The question is thus presented as to when and where the
scorching took place.  The only evidence presented on behalf
of the plaintiff bearing upon this question is that of the

engineer in charge and the hostler in the yard at Watertown. The engineer testified that he kept the crown sheet covered with water throughout the entire trip, and that on arriving at Mexico it still had two full gauges, which would be about six inches of water over the sheet. The hostler testified that he kept the engine watered whilst it stood in the yard at Watertown under his charge. From this evidence the jury was asked to find as a fact that the crown sheet had been scorched on some occasion prior to the accident. Opposed to this are the facts disclosed by the examination of the engine after the collapse and the testimony of the experts, from which it appears that the crown sheet was constructed of steel; that scorching tended to make it more dense and less ductile, so that it would be more liable to crack and less liable to expand; that it could not scorch or become red hot whilst covered with water; and that in their judgment the crown sheet must have been red hot at the time it collapsed.

The plaintiff, in order to recover, was bound to establish negligence on the part of the defendant by a preponderance of evidence. All questions as to the weight of evidence are final in the General Term, and this court has no power to review the determination of that court with reference thereto. But where the evidence which appears to be in conflict is nothing more than a mere scintilla, or where it is met by well-known and recognized scientific facts, about which there is no conflict, this court will still exercise jurisdiction to review and reverse if justice requires. (*People ex rel. Coyle* v. *Martin*, 142 N. Y. 352; *Hemmens* v. *Nelson*, 138 id. 517–529; *Linkauf* v. *Lombard*, 137 id. 417.) The judgment of the experts is based upon well-known and recognized scientific facts which to our minds is controlling. The crown sheet was found to have been scorched. It was white with a bluish cast and perfectly clean, tending to show that the scorching was recent; had it been worked after the scorching evidence of soot and discoloration would be expected. The stay bolts had drawn out, the arch inverted, the sheet extended and the holes elongated without sign of a crack or other flaw. Could this have

occurred with this steel sheet cool and under water; could it be stretched ten to fourteen inches and inverted in that condition? The experts say no. And their judgment accords with our learning and experience.

There is no evidence that the scorching was done on any other occasion, aside from the inference that might be possibly drawn from the testimony of the engineer already alluded to. He could determine the amount of water over the crown sheet by trying the gauge cocks. But in trying these he may have mistaken steam for water. However that may be, in the absence of further evidence showing that the sheet had been scorched on some prior occasion, we cannot regard it as presenting more than a scintilla of evidence, which will not justify a verdict against the physical and scientific facts that leave no room to doubt that the crown sheet had become dry and partially melted at the time of the collapse.

It appears from the testimony of the experts, that in case a crown sheet has been scorched and then cooled, that the stay bolts will be affected, and that thereafter there will be a leakage by the side of the bolts, and it is contended that this crown sheet had been known to leak before the accident. One witness spoke of its having leaked, but was unable to state whether it was before or after the accident. The place where it leaked, however, was stated by him to be where the crown sheet was joined on to the side of the boiler and was not at the place where it was scorched. The evidence was, therefore, unimportant. If the crown sheet was scorched at the time of the accident, it was the fault of the engineer, the co-servant of the deceased, and not that of the defendant.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.