The Texas Loan Agency v. Fannie R. Fleming et al.

No. 735.   Decided February 23, 1899.

1.  Jurisdiction of Supreme Court—Absence of Evidence—Legal Sufficiency.

The fact that there may be admissible evidence to prove an issue does not preclude the trial court from determining the question of its legal sufficiency; its duty is to instruct a verdict if the probative force of such testimony be so weak that it only raises a new surmise or suspicion of the existence of the fact sought to be established; and the same test is applicable to a finding of fact by a Court of Civil Appeals, when challenged in the Supreme Court on the ground that it is without evidence to support it.  (P. 463.)

2.  Same.

See opinion for evidence held insufficient in law to sustain a finding of fact by a Court of Civil Appeals that a certain use of defendant's premises by the guests of an adjoining hotel was with its knowledge and consent.  (Pp. 462-464.)

3.  Same.

Neither the fact that owners of leased premises, after their abandonment by the tenant, a hotel keeper, had accepted payment of rent from his subtenants, crediting same on their tenant's rent account, nor that they had made repairs upon the building, were sufficient to support a finding that such owners had resumed control of the building.  (Pp. 464, 465.)

4.  Negligence—Dangerous Premises—Door Opening Into Space—Remote Cause.

As bearing on the liability of the owner of premises for injury received while they were leased to another, caused by leaving open a door in the second story which opened out into space, the fact that such door was unfastened when the premises were leased to the tenant, a year before the injury, was not a proximate cause of the injury and was immaterial.  (P. 465.)

5.  Dangerous Premises—Landlord and Tenant.

When the landlord leases premises to another in good and safe condition, he is not liable for any injury which may result by reason of the negligence of the tenant to make use of the means furnished him by which the premises may be maintained in safety.  (P. 466.)

6.  Same—Unlocked Door Leading to Pitfall.

The landlord is not liable for the death of one using his premises while they were leased to another, where a door upon the second floor, opening from a hall only upon outer space, but provided with proper locks, was left unfastened and open, so that deceased, passing through it by mistake, fell to the sidewalk below and was fatally injured.  (Pp. 465, 467.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bowie County.

The Texas Loan Agency obtained a writ of error upon the affirmance of a judgment against it in favor of the widow, children, and parents of Edgar Fleming, for injuries causing his death and alleged to have been occasioned by its negligence.

*Frost, Neblett & Blanding*, for plaintiff in error.—Jurisdiction, power and duty of Supreme Court as to findings in this case.  Land Co. v. McClelland Bros., 86 Texas, 179; Tackaberry v. Bank, 85 Texas, 496; Joske v. Irvine, 44 S. W. Rep., 1059; Cunningham v. Railway, 88 Texas, 534.

No contractual relations of any character could have existed between

Fleming and appellant. Plaintiff's own evidence is that he was stopping at and was the guest of Benefield's hotel, a hotel managed by a man with whom the appellant had no relation or connection whatever. The loan agency under these facts would owe Fleming no more duty than if he had been staying at and was the guest of the private residence of any citizen of Texarkana, Texas. Clark v. Railway, 3 Am. Neg. Rep., 196; Sweeny v. Railway, 10 Allen, 373; Crogan v. Schiele, 53 Conn., 186; Schmidt v. Bauer, 5 Law. Rep. Ann., 580.

Appellant owed no duty to Fleming. Owing him no duty whatever, no negligence could be imputed to it arising from any failure or act of omission with respect to Fleming. No privity or legal relation of any character could result from these facts between the loan agency and Fleming that would, upon any well recognized rule of law, charge the former with liability to one, even if injured by the unsafe condition of its premises, when he is not upon them by its invitation, implied or otherwise. Oil Co. v. Morton, 70 Texas, 404; Railway v. Mangum, 68 Texas, 347; Marshall v. Heard, 59 Texas, 268; Dobbins v. Railway, 91 Texas, 60; Railway v. Edwards, 90 Texas, 65; Railway v. Morgan, 46 S. W. Rep., 28; Eyer v. Jordan, 19 S. W. Rep., 1095; Hanson v. Beckwith, 3 Am. Neg. Rep., 95; 16 Am. and Eng. Enc. of Law, 414; Alleghany v. Campbell, 107 Pa. St., 530; Railway v. Griffin, 50 Am. Rep., 783; Powers v. Harlow, 53 Mich., 507.

The owner of premises is under no obligation legally to keep them free from pitfalls and obstructions for the accommodation of persons who go upon or over them merely for their own convenience or pleasure, even where this is done with his permission, and when the owner is in possession. The licensee, in this case, goes there at his own risk and in the language of the law "enjoys the license with its concomitant perils." Railway v. Griffin, 50 Am. Rep., 784; Gibson v. Leonard, 143 Ill., 182; Sweeny v. Railway, 10 Allen, 373; Oil Co. v. Morton, 70 Texas, 404; Parker v. Publishing Co., 31 Am. Rep., 262; Holmes v. Railway, 4 L. R. Ex., 257; Crogan v. Schiele, 53 Conn., 186; Schmidt v. Bauer, 5 Law. Rep. Ann., 580.

A mere passive acquiescence on the part of the owner or occupant in the use of real property by others does not involve him in any liability to them for its unfitness for use. Schmidt v. Bauer, 5 Law. Rep. Ann., 580; Knight v. Abert, 6 Pa. St., 472; Moore v. Iron Co., 4 Cent. Rep., 50.

The "nuisance" which will bring home liability to the owner—the cases are uniform—must be one in its very essence and nature at the time of the letting, not something capable of being rendered one thereafter by the tenant. It must be a normal one. Kalis v. Shattuck 69 Cal., 597; Oriental v. Sline, 41 S. W. Rep., 131; Railway v. Mangum, 68 Texas, 342; Marshall v. Heard, 59 Texas, 266; Swords v. Edgar, 59 N. Y., 28; Owings v. Jones, 9 Md., 108; Bellows v. Sackett, 15 Barb., 96; Carson v. Goodley, 26 Pa. St., 111; Gandy v. Jubber, cited in note to Leonard v. Storer, 15 Am. Rep., 79; Clancy v. Byrne, 15 Am. Rep., 397; Han-

son v. Beckwith, 3 Am. Neg. Rep., 95; Bowen v. Anderson, 15 Eng. Ruling Cases; Lufkin v. Zane, 17 Law. Rep. Ann., 251.

The authorities are uniform to the effect that the owner of a building is not, as to the public, bound to keep the premises in such repair that they may be safely visited by the public. The occupant is prima facie liable to third persons for damages accruing to them from any defects in the leased premises. Marshall v. Heard, 59 Texas, 266; Railway v. Mangum, 68 Texas, 347; Oil Co. v. Morton, 70 Texas, 404; O'Connor v. Andrews, 81 Texas, 29; Ahern v. Steele, 5 Law. Rep. Ann., 449; Clancy v. Byrne, 56 N. Y., 129; Edwards v. Railway, 98 N. Y., 247; Mellen v. Morrill, 126 Mass., 545; Saltonstall v. Banker, 8 Gray, 195; Leonard v. Storer, 115 Mass., 86; Handyside v. Powers, 145 Mass., 123; Harpel v. Fall, 65 N. W. Rep., 913; Lufkin v. Zane, 17 Law. Rep. Ann., 251; 12 Am. and Eng. Enc. of Law, 690.

The strongest light in which the facts in the present case can, by any fair or reasonable construction, be viewed in behalf of appellees would show only a misuse of the means and appliances furnished by the loan agency to render the door safe and harmless, or his neglect or failure to properly use them. This being so, our investigation of this branch of the law justifies the assertion that no case can be found where, under similar facts, the landlord or owner has been held liable for damages for injuries arising from such misuse by the tenant or occupant of such appliances so furnished him, or his neglect or failure to properly use them, or charging the owner with liability where the tenant has absolute and independent control of the premises. Lufkin v. Zane, 17 Law. Rep. Ann., 251; Muller v. Stone, 27 La. Ann., 123; Hanson v. Beckwith, 3 Am. Neg. Rep., 95; Railway v. Griffin, 100 Ind., 221; Schmidt v. Bauer, 5 Law. Rep. Ann., 581.

Actual occupancy is, in all cases of this character, held to be absolutely necessary. Control is the criterion of responsibility, for control means that power which occasions and which can prevent. Shindelbeck v. Moon, 30 Am. Rep., 590; Fisher v. Thirkell, 4 Am. Rep., 423; Mellen v. Morril, 126 Mass., 545; Lufkin v. Zane, 17 Law. Rep. Ann., 253.

Collection of rents from McGraw, under the lease, disproves possession of appellant. Fisher v. Thirkell, 4 Am. Rep., 425.

Something more than the mere passive acquiescence in the use of the premises is necessary to make the owner liable for an injury received by one entering upon or passing over them. Carleton v. Iron Co., 99 Mass., 216; Railway v. Griffin, 100 Ind., 221; White v. Montgomery, 58 Ga., 204; McCarthy v. Bank, 43 Am. Rep., 592; Schmidt v. Bauer, 5 Law. Rep. Ann., 594; Cook v. Railway, 3 Am. Neg. Rep., 195.

Whatever negligence may have caused the injury was that of the tenant or occupant having possession and control of the door, as well as the entire premises, in failing to use the means and appliances furnished by appellant as they were intended to be used. McCarthy v. Bank, 43 Am. Rep., 593; Lufkin v. Zane, 17 Law. Rep. Ann., 253.

*Chas. S. Todd, R. W. Rodgers,* and *Hiram Glass,* for appellees.—Upon the testimony the jury was amply justified in finding that the defendant had resumed possession and control of the property, and was in such possession and control when Fleming was injured. O'Connor v. Andrews, 81 Texas, 28.

The undisputed evidence shows that the door was in the same condition as to its situation, unguarded by railing, balcony, or otherwise, and opening out on a sheer descent of eighteen feet to a brick pavement below, a veritable death-trap, at the time McGraw took possession on May 1, 1891, under his lease, as it was when the injury occurred; and the jury were authorized to find that it was a dangerous structural defect or nuisance on the premises. Whitaker's Smith on Neg., 53, 64-66; 221, 226, 227 (marginal pages, ed. 1896); Cool. on Torts, 606 and notes; Bish. Non-Cont. Laws, secs. 411, et seq.; Whart. on Neg., sec. 83; 1 Washb. Real Prop., 570; O'Connor v. Andrews, 81 Texas, 28; Perez v. Rabaud, 76 Texas, 191; O'Connor v. Curtis, 18 S. W. Rep., 953; Marsan v. French, 61 Texas, 173; Oriental Inv. Co. v. Sline, 41 S. W. Rep., 130; Hines v. Wilcox, 33 S. W. Rep., 914; Stenberg v. Wilcox, 33 S. W. Rep., 917; Bldg. Assn. v. Lawson, 37 S. W. Rep., 87; Timlin v. Oil Co., 27 N. E. Rep., 786; Tomle v. Hampton, 21 N. E. Rep., 800; Swords v. Edgar, 17 Am. Rep., 295; Bassett v. St. Joseph, 14 Am. Rep., 446; Carleton v. Iron Co., 99 Mass., 216; Stratton v. Staples, 59 Me., 94; Hayward v. Merrill, 94 Ill., 349; Chapman v. Rothwell, 96 E. C. L., 168; Clark v. Chambers, 3 Q. B. D., 327; 1 Wood on Nuisances, secs. 109, 120, 135, 126; Gagg v. Vetter, 41 Ind., 228; Wilson v. New Bedford, 11 Am. Rep., 352; Mullen v. St. John, 57 N. Y., 567.

As to resumption of possession and control by plaintiff in error after McGraw abandoned the premises and before the injury: Talbot v. Whipple, 14 Allen, 177; Amory v. Kannoffsky, 117 Mass. 351; McKinney v. Reader, 7 Watts, 123; Stimmel v. Bryant, 2 Bush., 282; Kinsey v. Minnick, 43 Md., 121; Matthews v. Tobener, 39 Mo., 115; Baker v. Pratt, 15 Ill., 288; Mining Co. v. Allen, 95 Ill., 288; Fry v. Patridge, 73 Ill., 51; Williams v. Jones, 1 Bush., 621; Elliott v. Aiken, 45 N. H., 30; Boehm v. Rich., 13 Daly, 62; Murray v. Shave, 2 Duer, 183; Ladd v. Smith, 6 Ore., 316; Warner v. Page, 4 Vt., 291; Witman v. Watry, 31 Wis., 638; 1 Washb. Real Prop., chap. 10, sec. 7; O'Connor v. Andrews, 81 Texas, 33.

As to implied invitation by plaintiff to Benefield's guests to go to and use the water closet. 1 Wood on Nuisances, sec. 135; Totten v. Phipps, 52 N. Y., 354.

The owner of a building owes the duty to the public, a stranger, or third person not a trespasser, to keep its property in such reasonably safe condition that the public or a third person, who is without fault, will not be injured by reason of any dangerous defect in or nuisance upon such building. Same authorities.

The owner is liable for injury to any such third person on such premises by invitation either expressed or implied; and implied invitation may arise from and be proved by the circumstances. Same authorities.

Actual knowledge either of the existence of the defect or nuisance or of the use of the premises is not necessary; if the facts and circumstances are such that the owner by the exercise of ordinary care, prudence, and dilligence might and ought to have known, he will be charged with knowledge of what it was his duty to have known. Same authorities.

BROWN, Associate Justice.—Fannie R. Fleming, the widow of Edgar Fleming, brought this suit for herself and her minor children, in which she was joined by the parents of her deceased husband. Plaintiffs sought to recover from the Texas Loan Agency damages for the death of Edgar Fleming, charged to have occurred through the negligence of the loan agency, at a hotel in the city of Texarkana, Texas. It was averred in the petition that the deceased lost his life through the defective and dangerous condition of a door in the hotel building, the property of defendant, at which he stopped as a guest. The plaintiffs recovered a judgment for $20,000, which was affirmed by the Court of Civil Appeals upon the following conclusions of fact:

"It was established by the facts that appellant, in 1891, held a mortgage on a certain hotel building in Texarkana, Texas, owned by one Benefield, and to settle the matter the hotel was partitioned, Benefield getting a portion 32 feet wide and 130 feet long, and appellant the balance of the building. The hall running east and west ran across both portions of the house and was used jointly by the different owners. The hall running north and south was in the part of the building belonging to Benefield. The water-closets in the building were all on the property belonging to appellant. Guests of the hotel, on the second floor, in order to reach the water-closets, had to pass along the hall running north and south until a short hall, also on Benefield's property, running east and west, was reached, at the end of which the room in which the water-closets were situated was reached. This room belonged to appellant, and access to it could only be obtained in the manner described. In addition to the door leading from the hall into the room, there was a door on the south of the room which opened out into space. The water-closets were used indiscriminately by the guests, whether in Benefield's or appellant's part of the house. The hotel was, on May 1, 1891, leased by Benefield and appellant to D. McGraw for a term of five years. At the time of the lease the door leading out into space was not locked nor in any manner protected or guarded, but was often left open. The condition of the door was known to appellant, and it remained in that condition until the accident occurred on the morning of March 3, 1892. On February 1, 1892, McGraw abandoned the hotel and appellant proceeded to collect rents from tenants of McGraw on the first floor, and Benefield opened an hotel in his part of the building, and with the knowledge and consent of appellant the guests of Benefield used the water-closets above described. On the night of March 2, 1892, Edgar Fleming, a guest of Benefield, went to the water-closets, and, the door being open that opened out into space,

stepped out, fell to the pavement fifteen feet below, and received injuries from which he died on March 4, 1892. We find that appellant at this time had resumed control of the hotel, and that the door was open on the night of the accident. Edgar Fleming was not guilty of contributory negligence in going through the door. Edgar Fleming lost his life through the negligence of appellant. The accompanying diagram will render assistance in arriving at an understanding of the condition of the premises hereinbefore mentioned."

The plaintiff in error assigns that the following findings of fact are without evidence to support them:

"1. With the knowledge and consent of appellant, the guests of Benefield used the water-closets above described.

"2. We find that appellant at this time had resumed control of the hotel and that the door was open on the night of the accident."

When a court of civil appeals has found from the evidence conclusions of fact, they are binding and conclusive upon this court, if there be evidence to sustain them. It is a question of law, however, for this court to determine if there be any evidence in the record to support the findings of that court. Choate v. Railway, 91 Texas, 409; Hudson v. Railway, 145 N. Y., 412; Hannigan v. Railway, 51 N. E. Rep., 992.

It requires no less testimony to support a finding of fact made by a court of civil appeals than if such findings were made by a jury in the trial of the cause. "It is the duty of the district court to instruct a verdict although there may be slight testimony in support of an issue, if the probative force of such testimony be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established; such testimony in legal contemplation falls short of being any evidence within the meaning of the law." Joske v. Irvine, 91 Texas, 574.

The fact that there may be evidence which was admissible does not preclude the trial court from determining the question of its legal sufficiency. The same test is applicable to a finding of fact by the Court of Civil Appeals when challenged in this court upon the ground that it is without evidence to support it. If the testimony be such that a district judge should instruct a verdict, then a finding by the Court of Civil Appeals upon such evidence would be equally untenable as a verdict.

The jurisdiction of the Court of Appeals of the State of New York to review the action of the General Term on the facts is quite similar to that of this court in regard to the findings of fact by the courts of civil appeals. In Hudson v. Railway, cited above, the New York court said: "All questions as to the weight of evidence are final in the General Term, and this court has no power to review the determination of that court with reference thereto. But where the evidence which appears to be in conflict is nothing more than a mere scintilla, or where it is met by well known and recognized scientific facts, about which there is no conflict, this court will still exercise jurisdiction to review and reverse if justice requires."

A careful examination of the statement of facts fails to show any evi-

dence whatever to sustain the following portion of the finding of the court: "And with the knowledge and consent of appellant, the guests of Benefield used the water-closets above described." Curtis, the only representative of the loan agency who appears to have been at Texarkana about that time, testified positively that he did not authorize Benefield or anyone to use any part of the building which had been leased to McGraw, and that the loan company and its officers never knew until after Fleming was injured that the rooms or closets belonging to it in said building were being used by Benefield or by any other person. Benefield testified that Curtis refused to rent him that part of the building, and Brown, the clerk of Benefield, testified that he had no authority from the loan company to use the rooms or any portion of the building that belonged to it. There was no testimony to the contrary of these statements that we can find in the statement of facts: We therefore sustain the objection of the plaintiff in error to that portion of the finding of the Court of Civil Appeals.

The second conclusion above copied rests upon two circumstances alone; (1) the Texas Loan Agency received from the tenants of McGraw, who occupied the first floor of the building, rent due under their contract with McGraw and credited the amount upon McGraw's account with it for rent; (2) that the accounts of Estes and Watlington, agents of the Texas Loan Agency, show that after the injury had occurred to the deceased, Mr. Fleming, and before the lease was canceled, they made some slight repairs to the building, at a cost of $8. The rent seems to have been collected first on the day that Fleming was injured, at night, the second day of March, 1892. Did the collection from McGraw's tenants of rent due to McGraw operate by law a cancellation of McGraw's lease and the taking of possession of the property by the loan agency? There is no evidence to show that it was intended on the part of the owner of the property to release McGraw and to resume control of the property itself, but on the contrary, its acts and declarations made at the time show a different purpose. There is nothing to show that the tenants who occupied the lower floor under leases from McGraw ever agreed to become the tenants of the loan agency or that any agreement was made by which the leases they held from McGraw should be canceled. The fact that the repairs were made upon the building does not tend to establish the proposition that the owner had resumed control thereof. McGraw had agreed to make repairs, had sublet a portion of the house, as his lease permitted him to do, and had himself attempted to abandon the lease of the building. If repairs were necessary for the protection of the building itself, or for the protection of the subtenants, then it was not inconsistent with plaintiff's claim against McGraw as its tenant that it should make the repairs which he had agreed to make but had failed to do.

Receipt by plaintiff in error of rent due to McGraw from his subtenants and crediting that upon McGraw's account was not inconsistent with the continuance of the lease between the landlord and McGraw.

Such act did not operate to release McGraw from his contract. It is not claimed that any change was made between McGraw and his tenants or that the loan agency took actual possession of any part of the premises. Beall v. White, 94 U. S., 382; Whitney v. Meyers, 1 Duer (N. Y.), 266; Bedford v. Terhune, 30 N. Y., 453; Graham v. Whichelo, 1 Cr. & M., 187. In Beall v. White, above cited, a lease had been made to a firm for a number of years. One member of the firm retired, leaving two as constituting the new firm. The landlord received the rent from the new firm under the old contract for some years. The retiring partner claimed that he was released by these acts, but the Supreme Court of the United States held that the lease was not canceled by the acts of the landlord.

We doubt if it can be said there is any evidence to sustain the findings of the Court of Civil Appeals that the door out of which deceased walked was open and unlocked at the time the loan agency delivered possession of the house to McGraw, but the fact, if true, is wholly immaterial to the issues involved in this case. The undisputed evidence shows that when possession was given to McGraw the opening through which the deceased walked was supplied with a good and suitable shutter, a lock with a key, and a bolt, by which it could be closed up and made entirely safe. McGraw took possession of the house on the 1st of May, 1891, and Fleming received his injury on the 2d of March, 1892, ten months after the date that possession was delivered to the tenant. If the door had remained open during all the time that intervened between the taking of possession by McGraw and the injury received, that injury would not have been the proximate result of the negligence of the loan agency in not closing the door at the time that it had possession of it, but would be attributable to the negligence of the tenant in failing to close the door and make it safe during the time the property was under his control. We shall therefore discard the fact that the door was not then closed in the further consideration of this case.

It is said that the door opened out upon space and was unprovided with bars and guards and was therefore dangerous in itself. It is a matter of common knowledge that windows are constructed so that the opening comes down about as near to the floor as a door, with sash adjusted upon cords and rollers by which they can be raised, and, when unsupplied with blinds, are as dangerous in themselves as the door in question. If the opening which caused the injury had been a window supplied with sash, instead of a door with a shutter, the danger would have been just as great as it was in the present instance and the liability of the landlord would have been the same. There is not in the record any testimony that tends to show that the door in question was unsafe when properly closed and secured, and, in fact, if anyone had testified to such a proposition, it would be incredible as being contrary to well known physical facts inconsistent with it. Hudson v. Railway, 145 N. Y., 412.

The judgment in this case rests solely upon the proposition that the

landlord is liable for the negligence of his tenant or other person who may, without authority from him, occupy the premises, and that the failure of such person to use the means which the landlord has furnished to make safe and secure the openings about the building renders the owner liable to the guests of such tenant for damages received by reason of that negligence. It is difficult to argue a proposition so palpably at variance with the well settled principles of law which determine the liabilities of such parties. We have, however, carefully examined this question and find that the authorities without exception, so far as we have been able to discover, are in direct opposition to any such claim of liability. The law is, that when the landlord leases premises to another and such premises are in good and safe condition, he is not liable for any injury which may result by reason of the negligence of the tenant to make use of the means furnished him by which the premises may be maintained in safety for all persons using them. Johnson v. McMillan, 69 Mich., 36; Adams v. Fletcher, 17 R. I., 137; Mellen v. Morrill, 126 Mass., 545; Leonard v. Storer, 115 Mass., 86; Handyside v. Powers, 145 Mass., 123; Kalis v. Shattuck, 69 Cal., 593; White v. Montgomery, 58 Ga., 204; Allen v. Smith, 76 Me., 335; McCarthy v. Bank, 74 Me., 315; Sargent v. Stark, 12 N. H., 332; Stewart v. Putnam, 127 Mass., 403.

The authorities cited above embrace the following classes of cases:

1. Cases in which the leased premises had water and sewerage fixtures which were capable of being used safely, but the tenant failed to make use of the means supplied, whereby the premises were overflowed and property of another injured.

2. Those cases where the premises let abutted upon a public highway, and for the purpose of supplying the basement of the building with fuel, had coal holes in the sidewalks of the streets, which, when leased, were supplied with the appliances necessary to making them safe and secure for persons walking over them, but the tenant either left the holes open or failed to make use of the securing appliances, and thereby pedestrians upon the public highway fell into the coal holes and were injured.

3. Where the premises leased were situated upon public highways with the roof overhanging the sidewalk, not being supplied with any means for preventing ice which might accumulate upon the roof falling into the street. The tenant failed to relieve the roof of the accumulation of snow and ice, and persons traveling upon the highway were injured by its falling upon them.

4. Where an awning was constructed in front of the leased building for the purpose of shading and protecting it from the weather, but the tenant permitted the awning to be used as a standing place for a number of people, whereby it was broken down and caused injury to those who were assembled or passing upon the highway beneath it.

In all of those cases, the courts held that the owner of the land was not liable for the negligence of the tenant in failing to use the means supplied to him for protecting others from injury.

In the case of Sargent v. Stark, above cited, the landowner had built a dam across a stream under a law that forbade him, during a given season, to submerge certain lands adjacent to the stream. The dam was built in accordance with law and provided with water gates by which the quantity accumulated could be at any time reduced so as not to affect the lands forbidden to be overflowed. The landowner leased the mill and the dam to another, who failed to make use of the gates. The land was overflowed and suit was brought against the owner. In passing upon the case, the Supreme Court of New Hampshire said:

"There can be no doubt that Stark had a right to build a dam on his own land, of such model and dimensions as he pleased, unless it was so constructed as necessarily to affect the right of his neighbors by overflowing the land above, or by obstructing improperly the passage of water to the land below. * * *

"We infer from the case that the proprietor of the mills was restricted as to flowage only during a portion of the year. If so, it was only necessary that the water should be properly drawn down during that portion of the year in which his right was limited in this respect. At all events, it is the neglect of the proper control and management of the water, and keeping it within its legal limits, that prejudices the plaintiff, and not the erection of the dam. * * * It will hardly be pretended that the lessor of the mills would be liable for the mismanagement of the water by the lessee. * * * Those only can be rendered liable under the circumstances of this case, who were so managing and controlling the water as to cause the injury."

That case is directly in point and clearly announces the true doctrine upon this question. It was no injury to anyone for the loan company to own a house in which there was a door opening out upon space without bars or guards, provided it had a sufficient shutter to close the opening, and sufficient lock and bolts to secure the shutter in place. As the Supreme Court of Michigan said, "it was the neglect of those who used the house to properly control and manage" the shutter to the door that caused the injury to Fleming.

Modern methods of heating and lighting, furnishing water and sewerage, when used with care contribute much to the health and comfort of the people, but by want of care may be made offensive, dangerous, and destructive to life and property. If the doctrine upon which this case rests should prevail, no property owner could safely lease to another premises thus fitted up for use as hotel building or the like, for by negligence in using gas a guest might be asphyxiated, or want of care might introduce poisonous sewer gas into the building, producing death to the customers of the tenant.

The trial court in effect charged the jury that if there was a door at the place provided with a shutter, with lock and key, but it was not closed and secured at the time the lease was made and possession delivered to McGraw, then the loan agency would be responsible for the injury received. The trial court erred in submitting the case to the

jury with such instructions and the Court of Civil Appeals erred in affirming the judgment. It is therefore ordered that the judgment of the District Court and of the Court of Civil Appeals be reversed, and that this cause be remanded for further trial.

*Reversed and remanded.*