CELINIRE LEVESQUE, administratrix, *vs.* HILDRETH & ROGERS COMPANY.

ALICE LYSAGHT, administratrix, *vs.* SAME.

BENJAMIN BABB, administrator, *vs.* SAME.

Essex.    April 6, 1931. — September 10, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Negligence*, Elevator, Invited person, Independent contractor, Causing death, Of one owning or controlling real estate. *Evidence*, Competency. *Damages*, In tort. *Practice, Civil*, New trial, Exceptions.

At the trial of an action of tort by an administrator against the owner of a building for the conscious suffering and death of the plaintiff's intestate resulting from the fall of an elevator car in the building, there was evidence that, shortly before the accident, the defendant, following reports to him that the elevator needed repairs, requested a competent elevator company to "make whatever repairs are necessary for complete safety"; that the repairs were made by employees of the elevator company, assisted by employees of the defendant who knew or should have known of its condition during the progress of the work; that the fall of the car occurred before the completion of the work and was due to failure properly to attach the cables, to adjust the safety appliances and to guard against the play of the car; that, through careless inspection, such defects were not observed or, owing to negligence due to the defendant's desire to combine use of the elevator with the carrying on of the repairs, were not corrected; and that the plaintiff, without knowledge that the repairs were in progress, was using the car at the time of its fall to deliver goods for use by the defendant in his business. Upon exceptions by the defendant after a verdict for the plaintiff, it was *held*, that

(1) A finding was warranted that the elevator company was not in full control of the repairs to the exclusion of the defendant;

(2) For that reason, and in view of the dangers attendant upon the making of the repairs, the defendant was not relieved of liability by his having selected a competent independent contractor to make

them: he was bound to keep the premises reasonably safe for use by those whom he invited thereon;

(3) The evidence warranted a finding that the defendant was negligent;

(4) The verdict for the plaintiff was warranted;

(5) It could not properly have been ruled that the defendant's culpability was "very slight";

(6) It was error, prejudicial to the defendant, to exclude evidence that an employee of the defendant, upon being told by the person in charge of the repairs for the elevator company that the elevator was good for another fifteen years, repeated that statement to the defendant; such evidence was material both on the issue of the defendant's negligence and on the issue of the degree of his culpability; and an exception by the defendant to its exclusion was sustained.

No error of law nor abuse of discretion appeared in the denial of a motion for a new trial of the action above described on the ground that the damages on the count for death, in the sum of $9,000, were excessive.

An exception, to the denial of a motion for a new trial of an action on the ground that the plaintiff's counsel had made an improper argument to the jury, must be overruled: that question must be raised at the trial.

THREE ACTIONS OF TORT, each for the conscious suffering and the death of the plaintiff's intestate. Writs dated October 1, 1928.

The actions were tried together in the Superior Court before *Beaudreau,* J. Material evidence is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in its favor. Rulings requested by the defendant and refused by the judge in each action are described in the opinion. The count for conscious suffering was waived in the first action. The jury found for the plaintiff in each action in the sum of $9,000 on the count for death; and for the plaintiff in the second and third actions in the sum of $2,000 on the count for conscious suffering. The defendant alleged exceptions. It also filed a motion for a new trial in each action on the grounds that the verdict was against the evidence, the weight of the evidence and the law; that the damages were excessive; and that counsel for the plaintiffs had made improper arguments to the jury. The motions were denied. The defendant alleged exceptions to such denial.

*S. Parsons,* (*E. Parsons & W. J. Bradley* with him,) for the defendant.

*M. A. Sullivan,* (*M. A. Cregg* & *H. M. Siskind* with him,) for the plaintiffs.

WAIT, J.   The intestates were killed by the falling of an elevator in a building owned and controlled by the defendant.   Two suffered consciously.   Actions were brought against the defendant and against an elevator company that had undertaken repairs upon the elevator which may not have been fully completed at the time of the accident. Counts at common law were joined with counts under G. L. c. 229, § 5, as amended by St. 1922, c. 439, and St. 1925, c. 346, § 9.   In the action by Levesque the common law count was waived.   Damages in $2,000 on the common counts were awarded against both defendants; but upon the statutory counts, in each action, the jury assessed $500 against the elevator company and $9,000 against the owner.   The latter saved exceptions to the refusal of the trial judge to direct verdicts in its favor; to his refusal to give certain instructions requested; and to the exclusion of testimony offered.   By a supplementary bill of exceptions it excepted to denial of its motions for new trials based upon a claim that the award of damages for culpability is excessive as matter of law, and a claim of improper argument by counsel for two of the plaintiffs.

Salient facts shown by uncontroverted evidence were as follows: The deceased men, employed by one Crouse as express teamsters, on June 26, 1928, went to the building of the defendant to deliver certain plates of lead to be used by the defendant in its business of publishing a newspaper. They opened a basement entrance by a key in the possession of one of them; got at an elevator used for freight and, at least, also for persons in charge of freight; and loaded twenty-seven plates of lead weighing about one thousand thirty pounds upon it; got upon it themselves, thereby adding about five hundred or six hundred pounds to its load; and started the hoist.   At some point in the upward course, the car halted and then fell to the basement.   When examined after the removal of the injured men, the hoisting cables were found to be wound upon the drum at the head of the elevator well, but with

portions dangling below the pulley, somewhat frayed, bent
upward near the end, and still bearing, hanging loose upon
them in the loops, the U bolts or clamps which had fastened
and held the cables to the car.   The dogs of the safety
clutches had scarred the guides but had turned completely
over, thus failing to hold the falling car.   The fuse of the
electrically driven motor was much heavier than was called
for by the estimated load of the car.   A piece was broken
from the guides.   The elevator had been installed in 1913
and regularly inspected, at first by the builder, the Salem
Elevator Works, and later monthly by the Otis Elevator
Company, last on June 2, 1928.   On May 25, 1928, an in-
spection was made by a representative of the company
insuring the elevator, who on June 6 notified the defendant
that he reported that the hoist cables should be renewed.
Sometime in May the defendant asked the Salem Elevator
Works, Incorporated to inspect; and under date of May 31
received a report that one Wilson in their employ stated
"that the elevator is entirely safe to run, the only trouble
being that there is a great deal of play in the car," but
that the hoisting and weight cables were quite worn and
"should be replaced in about three months," that to take
out the play the maple track should be replaced, and the
present guide posts "which are in very poor condition"
should be faced up.   That company suggested a new type
steel frame car, new guides and new guide posts, but said
"as the elevator is in safe condition, we are not urging
you to make any change until" the car play is so much
that you wish it tightened.   On June 8, 1928, the defendant
wrote the Salem Elevator Works "Will you kindly fix the
cable on our elevator and make whatever repairs are neces-
sary for complete safety?" and immediately thereafter a
man from the works discussed what should be done, with
one Rogers of the defendant.

The evidence with regard to what was said was contro-
verted.   The jury could find that the defendant ordered
that new cables be put in and necessary work to remove
play and to make the elevator safe be done; but that the
defendant stated that it must be able to use the elevator

while the work was going on.  Taken most favorably for the plaintiffs, there was evidence not here stated in detail which would support findings that employees of the Salem Elevator Works put in new cables using the old U bolts as clamps for fastening the cables to the car, although the method of using clamps was less safe than a method of sockets or of splicing;  that the accident occurred because the clamps were not properly applied, so that on meeting a sudden strain or heavy loading of the car the cables pulled out.  They could find that the safety appliances were set improperly too far from the guides, so that the teeth in the dogs did not engage as they should have done, and the dogs turned over;  or that owing to play not guarded against, the car jammed in ascending, brought heavy strain upon the motor, not relieved because of the excessive size of the, safety plugs, so that the motor pulled the cables from their clamps and let the car drop.  They could find by inference that these defects were not observed through careless inspection;  or not corrected owing to negligence due to the effort to combine use of the elevator with the carrying on of the repairs.  They could find that employees of the defendant assisted the workmen from the Salem Elevator Works in labor upon the elevator and in testing it as the work went on, who knew or should have known the condition of the elevator.  There was no dispute that the elevator was used in carrying loads of lead of very considerable weight on the Saturday and Monday before and on the early forenoon of the Tuesday on which it fell. There was evidence that the man in charge of the repairs for the Salem Elevator Works on Monday stated to the employee of the defendant who was assisting him that the elevator as it then stood was safe to use for fifteen years more.  This the man denied.  They could find that when the car fell the workmen of the Salem Elevator Works had not finished the repairs contemplated.  There was no evidence to show that the expressmen knew that repair work was in progress.  Without further statement of the evidence in detail, it is manifest, we think, that the trial judge could not properly direct verdicts for the defendant, nor

instruct the jury, as requested, that there was no evidence of culpability or negligence on the part of the defendant; that, since it had employed a reputable company and skilled men to inspect and repair the elevator a short time before the accident, it was not liable for the injuries of the decedents; and that its culpability, if any, was very slight.

The injured men were invited to the premises in carrying on the defendant's business. It owed to them the duty to use reasonable care to see that those premises were reasonably safe for the use contemplated. This duty it could not delegate. As was stated in *Curtis* v. *Kiley*, 153 Mass. 123, 126, "when the owner of premises which are under his control employs an independent contractor to do work upon them which from its nature is likely to render the premises dangerous to persons who may come upon them by the invitation of the owner, the owner is not relieved by reason of the contract from the obligation of seeing that due care is used to protect such persons. The owner cannot continue to hold out the invitation without being bound to exercise due care in keeping the premises reasonably safe for use according to the invitation." This is established as law in this Commonwealth by many cases, illustrated by *Brackett* v. *Lubke*, 4 Allen, 138, *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487, 489, *Stewart* v. *Putnam*, 127 Mass. 403, *Sturges* v. *Cambridge Theological Education Society*, 130 Mass. 414, 415, *Woodman* v. *Metropolitan Railroad*, 149 Mass. 335, *Thompson* v. *Lowell, Lawrence & Haverhill Street Railway*, 170 Mass. 577, *Boucher* v. *New York, New Haven & Hartford Railroad*, 196 Mass. 355, *Hall* v. *Henry Thayer & Co.* 225 Mass. 151, 154, *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 232. It is law elsewhere: *Besner* v. *Central Trust Co. of New York*, 230 N. Y. 357, *Scott* v. *University of Michigan Athletic Association*, 152 Mich. 684, *Lineaweaver* v. *Wanamaker*, 299 Penn. St. 45. It is recognized in *Pickett* v. *Waldorf System, Inc.* 241 Mass. 569, where the distinction is shown between acts for which the independent contractor is liable alone, and those for which the owner of premises who has contracted with him remains liable also.

Whether, in the circumstances, this duty had been performed was matter of fact upon which there was evidence for a jury. Doubtless there are cases where, as matter of law, the evidence does not disclose fault, — where no jury could be permitted to find that the person charged with neglect had failed in performance of his duty. Here, although a desire to secure a safe elevator is evident, and action to obtain it is clear, we cannot say as matter of law that the defendant, through its servants with opportunity for knowledge, did not know of conditions which called, at least, for a warning to those about to use the elevator, a warning which was not given, it might be found, through its lack of care. Only where he is in complete control of the entire situation, so that the employer is powerless to affect it, and where that situation excuses the latter from any duty except to select a competent and reliable contractor, does the presence of the independent contractor absolve the employer from liability. No one questioned the competence or reliability of the contractor here. It was open, however, for a jury to find that the contractor was not in full control of the situation; and for the judge to rule that in view of the dangers attending a fall of the elevator and the risks of defects before full completion of the work, the defendant did not discharge its full duty if it merely satisfied itself that it had employed capable and trustworthy people to make repairs.

The defendant offered to show that one of the defendant's employees after being told by the man in charge of the repairs for the Salem Elevator Works that the elevator was good for another fifteen years told the statement to Rogers, treasurer and general manager of the defendant. The evidence was excluded. We think the ruling was wrong. Such a statement if reported to Rogers would have a material bearing upon the culpability of the defendant. One who honestly but mistakenly believed the elevator to be safe would not be as blameworthy for failing to take precautions as he would be if he had no such belief. Rogers might well trust the report of the statement (which seems in the nature of a communication intended

to be brought to his notice) and abate his care. The damages for the deaths were measured in law by culpability not by liability. Blameworthiness, not responsibility, was the issue in determining the amount of the damage. The report of the evidence indicates that Rogers and the defendant were regarded as identical. Jurors, who believed Rogers had been told that the elevator, after what had been done upon it, was good for another fifteen years, might properly demand much less care from him thenceforth than if he had not been so informed; and attach much less blame to any neglect of his. No question seems to have been raised that the statement, if made, was communicated to Rogers before the accident. Furthermore if it were believed that the defendant received this report and, from it, understood that the elevator was fit for use, the jurors might take a different view with regard to the defendant's negligence, independently of responsibility for the acts of the Salem Elevator Company or its servants. This exception must be sustained.

The exceptions in connection with the motions for new trials must be overruled. No good exception lies to any ruling on a motion for new trial that could have been made at the trial. If the defendant wished to raise the question of propriety of argument it should have called attention to it at the trial, and have asked appropriate action there. It did not. Now it is too late. *Commonwealth* v. *Cabot*, 241 Mass. 131, 151. We cannot say, as matter of law, that the damages measured by culpability were excessive. The trial judge has refused to reduce them. He, like the jury, saw and heard the witnesses, but without the testimony which we have here held to be admissible. The amounts seem to us extraordinary. They indicate that the value of the lives to the deceased men and their dependents rather than the *quantum* of blame attaching to the defendant has been the measure applied. We are not in position, however, to find abuse of discretion in denying the motions on this ground. No exception was taken to the charge in this regard.

*Exceptions sustained.*