## McMAHON v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department.   May 4, 1910.)

1. MASTER AND SERVANT (§ 198*)—INJURIES TO SERVANT—FELLOW SERVANTS —RAILROADS.

Where the engineer of a locomotive permitted the water in a boiler to get so low as to cause an explosion, resulting in the death of a brakeman, the engineer's negligence was that of a fellow servant and created no liability on the railroad company for the brakeman's death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 503; Dec. Dig. § 198.*]

2. TRIAL (§ 143*)—QUESTION FOR COURT OR JURY—INCONSISTENCY IN TESTIMONY.

Where there was inconsistency in the testimony of various witnesses offered by plaintiff, the duty of harmonizing or weighing the testimony was for the jury, and not for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 342; Dec. Dig. § 143.*]

3. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—ACTION—ISSUES AND PROOF.

While the fact that the locomotive, by explosion of which plaintiff's decedent was killed, was unsafe, did not constitute negligence on the part of the railroad company, such fact, in connection with other proof that defendant by proper inspection should have known that it was unsafe, sufficiently supported an allegation of negligence in that defendant provided an unsafe engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 872; Dec. Dig. § 264.*]

4. MASTER AND SERVANT (§§ 285, 286*)—INJURIES TO SERVANT—INSPECTION OF LOCOMOTIVE—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a railroad brakeman by the explosion of a locomotive, evidence *held* to require submission to the jury of the questions whether the engine was defective, and, if so, whether the accident was due to such defect, and whether defendant had made proper inspection and tests to discover the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1003, 1016, 1019, 1029; Dec. Dig. §§ 285, 286.*]

Appeal from Trial Term, Tiogo County.

Action by Margaret McMahon, as administratrix of the goods, chattels, and credits of Henry P. McMahon, deceased, against the Lehigh Valley Railroad Company. From a judgment dismissing plaintiff's complaint at the close of all the evidence, she appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and COCHRANE, SEWELL, and HOUGHTON, JJ.

Charles C. Annabel (James O. Sebring, of counsel), for appellant. Diven & Diven (Alexander S. Diven, of counsel), for respondent.

COCHRANE, J.   This is an action to recover damages for negligently causing the death of the plaintiff's intestate, Henry P. McMahon. On the 23d day of December, 1905, he was employed as head brakeman on a freight train of the defendant running southerly from Geneva to Sayre in the state of Pennsylvania. When between

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Spencer and Van Etten in this state, either the crown sheet or rear flue sheet adjacent to the fire box in the engine collapsed owing to the extreme pressure of steam thereon, allowing the steam and water to escape into the fire box, and McMahon, who was standing on the tender attached to the engine, received injuries resulting in his death. The crown sheet constitutes the roof or upper part of the fire box, which is 12 or 14 feet long, and the rear flue sheet constitutes the front end of the fire box.

The complaint alleges that the defendant negligently provided an unsafe engine, and that the same was out of repair, defective, and dangerous. It also alleges negligence in keeping an inadequate supply of water in the boiler. This latter negligence, if it existed, was that of a fellow servant for which there could be no recovery for an accident occurring at the time in question. The defendant's theory of the explosion is that the water which should surround the fire box and cover the crown sheet had been negligently permitted by the engineer to get below the crown sheet, and that this was the cause of the explosion. Such theory was controverted by the engineer and fireman, who both testified, in effect, that the boiler was full of water. An expert witness also testified that an explosion could not be caused in that manner.

Plaintiff produced two witnesses, Bogart and Van Horn, blacksmiths by occupation, who resided in the immediate vicinity of the accident and examined the engine directly after the explosion. From their testimony it appears that the crown sheet was cracked and broken by the explosion; that the broken edges showed the metal to be brittle, rotten, and dark colored as the result of burning or excessive heat; that the crown sheet was thicker at the sides and thinner towards the center, where most exposed to the heat in the fire box; that the thickest point was about half an inch in thickness, and the thinnest point from one-fourth to three-eighths of an inch. True, these witnesses were unfamiliar with the mechanism and names of the different parts of a locomotive engine; but there is no doubt from their evidence that they were describing the roof or upper covering of the fire box, and there can be no doubt that from their experience they were fully qualified to testify as to the condition and nature of the metal, and that it had been weakened and scaled off by exposure to extreme heat.

Plaintiff also produced as an expert a witness by the name of Kennedy, who examined the engine at the time of the trial nearly three years after the accident. He testified that the crown sheet was unbroken and in good condition, and that the rear flue sheet was fractured 12 or 14 inches below the crown sheet. The duty of harmonizing or weighing inconsistencies in the testimony of the various witnesses rests, not on the court, but on the jury, and we are not at liberty to attempt to offset the testimony of Kennedy as to which sheet broke against the testimony of the other witnesses. Perhaps the engine was not in the same condition at the time of the trial as it was immediately after the explosion nearly three years earlier. Probably it is not very material whether it was the crown sheet or the flue sheet which was fractured. Perhaps it was both. If it was the flue sheet, Ken-

nedy testified, in substance, that it was thin and worn away by the corrosive action of scales due to repeated overheating.

Evidence was given as to the methods of inspection and tests to which an engine should be subjected. It appears that one of such methods is tapping the sheets with a hammer which discloses the deterioration and variations in thickness. A boiler inspector in the employ of the defendant testified that he inspected this engine on December 4th, 19 days before the accident, by tapping the ends of the stay bolts with a hammer; but he made no examination of the crown sheet or side sheets other than looking at them with the assistance of· a lighted torch. He did not tap the sheets for the purpose of discovering any weakness or thinness therein. It was customary to inspect engines once every 30 days; but the witness in question had made no inspection of this engine except as stated, and no other witness was produced by the defendant who made a similar inspection.

It appears that another method of inspection or testing an engine is the hydrostatic test, which consists in forcing water into the boiler so as to increase the pressure more than the regular working pressure. This boiler in question was adjusted at 145 pounds working pressure. The testimony of Kennedy was to the effect that for such a boiler the hydrostatic test should be made at 200 pounds pressure, and in this particular he was uncontradicted. It appears that the engine in question was subjected to this test about a year before the accident; but the pressure applied was only 165, instead of 200 pounds. The testimony of the engineer tends to show that immediately before the accident he discovered that the steam pressure had increased to 170 pounds owing to the failure of the safety valve to work properly. It may very well be, therefore, that if a proper hydrostatic test had been applied to this engine, its weakness would have been disclosed. Evidently this test was designed to guard against such an unusual occurrence of extreme pressure as was manifested just prior to the accident. Even if it be assumed, as claimed by the defendant, that the engineer was negligent in permitting this excessive steam pressure of 170 pounds, his negligence will not exonerate the defendant if by the use of ordinary tests a weak or dangerous condition of the engine would have been exposed, and it negligently omitted to apply such tests, or made them in a negligent manner. There is more or less vagueness in the testimony concerning the various tests to which locomotive engines are subjected. But the defendant in its practice recognized the propriety of a monthly inspection of its engines, and also of the hydrostatic test, and I think, under the evidence, it was a fair question for the jury as to whether or not the defendant in a proper manner made such inspection and tests as it assumed to make.

The case of Hudson v. Rome, Watertown & Ogdensburg Railroad Company, 145 N. Y. 408, 40 N. E. 8, is distinguishable from this case. There was in that case no contradictory evidence as to the condition and appearance of the engine after the accident. There was no fracture of any of the sheets surrounding the fire box, but the crown sheet was stretched and bent down so as to form an inverted arch. It was clean and presented a light color, without evidence of soot or discolora-

tion, showing that the overheating was simultaneous with the accident. Well-known scientific facts were regarded as conclusively demonstrating that the accident could not have occurred when the crown sheet was cool and under water, notwithstanding the evidence of the engineer and hostler to the contrary. The evidence in this case as to the condition and appearance of the sheets is conflicting and presented a question of fact as to whether or not the scorching or burning of the sheets had taken place prior to the accident.

The complaint, it is true, does not in specific language allege that the defendant failed to properly inspect this engine. But it alleges negligence in providing an unsafe engine, and the failure to make a proper inspection is the evidence of such negligence. The mere fact that the engine may have been unsafe does not constitute negligence. But when, in addition thereto, it appears that the defendant by proper inspection should have known that it was unsafe, the allegation of negligence is supported. The evidence of insufficient inspection was therefore secundum allegata.

While much immaterial and confusing evidence was introduced tending to obscure the essential points in the case, I think sufficient may be gleaned from all the evidence to make it necessary for the jury to determine whether this engine was defective, and, if defective, whether the accident was due to such defect, and whether the defendant had made the proper inspection and tests to apprise itself of such defect.

The judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.