FREEMAN et al. v. HUFFMAN.
(No. 11–2578.)

(Commission of Appeals of Texas, Section B.
Dec. 11, 1918.)

1. RAILROADS �picture400(14)—ACTION FOR INJURY—JURY QUESTION.

In action for injuries by moving of train while plaintiff was crossing between tender and coal car, whether defendant's brakeman saw plaintiff between the cars was, under the evidence, for the jury.

2. RAILROADS ⊕400(14)—ACTION FOR INJURIES—JURY QUESTIONS—DISCOVERED PERIL.

In action for injuries received upon the unexpected moving of a train while plaintiff was attempting to cross between the tender and a coal car, whether the brakeman, upon seeing plaintiff between the cars, could have prevented injury, should have been submitted to the jury, where ordinary minds might have differed as to the conclusion to be drawn from the evidence.

3. RAILROADS ⊕400(8)—ACTION FOR INJURY—JURY QUESTION.

In action for injuries received upon the unexpected moving of a train while plaintiff was attempting to cross between tender and coal car, evidence, held insufficient to raise issue whether brakeman upon seeing plaintiff knew train was likely to move, and whether, if he had so known, he could have prevented train from moving.

4. RAILROADS ⊕400(14)—ACTION FOR INJURIES—DISCOVERED PERIL—JURY QUESTION.

Where evidence was insufficient to raise issue of whether brakeman, an employé of defendant railroad, knew, upon seeing plaintiff between coal car and tender, that train was likely to move, and whether if he had so known he could have prevented train from moving, court was not authorized to submit issue of discovered peril.

5. APPEAL AND ERROR ⊕1053(1)—REVIEW—HARMLESS ERROR.

The admission in evidence of a city ordinance was harmless, where court withdrew it from consideration of jury.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by J. K. Huffman against T. J.

---

Freeman, receiver, and others. Judgment for plaintiff affirmed by the Court of Civil Appeals (156 S. W. 367), and defendants bring error. Reversed.

J. K. Huffman recovered judgment in the district court against the International & Great Northern Railway Company for personal injuries. There were two trials. On the first trial, plaintiff having recovered, an appeal was taken, and the Court of Civil Appeals reversed and remanded the case. 61 Tex. Civ. App. 200, 130 S. W. 195. In that opinion the court held that plaintiff was guilty of contributory negligence as a matter of law, but that the evidence raised the issue of discovered peril. On the second trial the court submitted the case to the jury wholly on the issue of discovered peril.

On appeal to the Court of Civil Appeals, the second judgment in favor of plaintiff was affirmed. 156 S. W. 367. In the latter appeal, as in the first, the defendant below asserted the proposition that the evidence was wholly insufficient to authorize the submission of the issue of discovered peril or to sustain the verdict and judgment. That proposition is now before us for consideration.

The evidence on the issue of discovered peril as developed on the trial is as follows:

Plaintiff testified:

"While working at this mill on the 4th day of December, 1908, I was injured. It was in the early morning between 6 and 6:30. At that time of the year it was not good light at 6:30, and on that particular morning it was cloudy, making it dark enough to have to have a light to see by. On that morning I was working at the meal cookers, and there was one of the men working for me at the mill came and told me that they wanted me to come out and weigh a car. * * * I quit work right at once and started out to weigh the car. This was a car of cake that had been loaded the day before to be shipped out over the International & Great Northern Railway. I went out of the middle door of the mill, which is the main entrance, and when I got outside there was a train on this spur track consisting of an engine, coal tender, coal car, and a car of cake. The engine was facing east back toward Rockdale, and the rear of the train was west, and the coal car was next to the coal tender of the engine, and this car of cake that I was going to weigh was the last car on the west end of the train and looked like to me that it was right on the scales. The train was standing perfectly still. * * * The engine tender and coal car were right opposite or about opposite this middle door where I came out of the mill. There was an electric light hanging right there in that window by the door, and also one there at the door; but I don't know whether the door was closed at the time or not. I can't say about that, but there was plenty of light out there. I could see everywhere up and down the mill from that door back to the west. * * *

"When I started to go through there between this engine tender and coal car—there is a handle bar fastened upon the side of the car to catch hold of and also one on the tender—I caught hold of both of these handle bars, one with my right and the other with my left hand, stepping with my right foot onto this running board, and then I placed my left foot on the

shoulder of the drawhead which couples the two cars together and is about two or three feet from the running board and which is the only place where I could put my foot. That shoulder has a play of about four or five inches. I put my left foot on the knuckle or shoulder of the coal car and was pulling myself up, and about the time I was pulling myself up with all the weight on my left foot, they made a movement of the car, causing my foot to slip off of this knuckle, and after I had placed my left foot on the knuckle or shoulder of this coal car and was pulling myself up—I was possibly up halfway and had pulled my weight up off of my right foot—I saw the brakeman pass by this opening where I was going through, on the opposite side of the train, passing from the east or front end of the train down toward the scales in the rear of the train and had a lantern in his right hand, and in passing that opening where I was he had his face turned in my direction, and I caught his eye as he passed by. I mean by that he was looking in my direction, and I looked in his eyes. His eyes were open, and I saw his eyes. Just shortly after this brakeman passed, they moved the car, and the movement jarred my foot off this knuckle down between the drawhead and the coupler. I do not know what direction they moved the car, but I judge it moved about six inches. * * * The name of the brakeman that passed on the opposite side of the train from me while I was crossing through was Dolan. I have seen him since this accident. As to how long this brakeman had passed beyond this opening where I was after I saw him, it hadn't been very long. I judge he had time to have went something like three or four steps, about eight feet. From the motion he made as he came by walking, he had time to have taken about three or four steps. * * * "When an engine and couple of cars came in on that spur track, if you were on the north side of the track, a train would cut your view off of anything on the mill side through the opening of the cars. I have never measured the width of these openings between the cars, but, judging the way I caught hold of the cars, I judge the space is about four feet wide. The sides of that tender and coal car was solid. They didn't have any slats in them. * * * Mr. McMillan was with me when I left the mill. We had the doors closed that morning, but I don't remember whether we closed the door behind us as we went out or not. The rear end of the engine tender was nearly opposite the door that we came out of, virtually in front of the door. * * * I did not see a single member of the train crew on the ground on the mill side of the train. I could not swear that the engineer saw me. * * * Mr. McMillan was right behind me when I came out of the mill. I went out first. He was along with me the whole time. * * * I was trying to get over there to weigh this car just as quick as I possibly could. * * * I had got up with my weight on my left foot which was on the knuckle of the coupler when they made the movement, and could not have been there as long as a couple of seconds. It was done on the instant; that is, when it caught my foot. It was a short time from the time I put my foot on the running board of the tender and pulled myself up, but I could not say how long. * * * There was no part of the train crew on the ground on the mill side when I came out of the mill. When I was in the act of pulling myself up, I saw the brakeman pass on the opposite or north side of the train with a lantern in his hand, in his right hand. He was right close up to the car, but he wasn't rubbing them. He had his lantern in his hand away from the car, hanging down by his side, and it must have been two feet off the ground. * * * I was pulling myself up to go over on the other side as he passed. I had just raised my right foot

in making an effort to step over, but I had not got up in a standing position at all. * * * I cannot say how long that man was under my observation, possibly just a second. I just saw him as he passed by the open space. * * * From the time I entered the space and got up on the coupler, it was a matter of just a few seconds."

This witness made a statement December 21, 1908, in which he said:

"I stepped on the step of the engine tender with my right foot and placed my left foot on the drawhead, but as I started to pull myself up my left foot slipped down between the drawhead and a part of the car, and at the same time the train moved a few inches and caught my foot, mashing it. * * * I saw a brakeman pass toward the scales on the opposite side of the train from me just before my foot was caught, but I do not know if he saw me or not. I don't think any of the trainmen knew I was between the cars. * * * If my foot had not slipped off the drawhead, I would not have been injured, even if the train had moved."

Continuing, the witness testified on this trial:

"That window was right opposite the opening where I went through between the engine tender and the coal car, and the light shone through that window, and it was perfectly light at that place. I could see distinctly all the way through the opening of that car." (The witness testified on first trial.) "On that trial, in answer to the question, 'You are willing to swear that you saw his eyes, but you won't swear that his eyes saw you?' referring to the brakeman passing on the opposite side of the train, I answered: 'No, sir; I won't swear to that.'"

D. B. McMillan testified:

"Mr. Huffman came right out of the mill and walked right over and stepped on the running board of the engine tender with his right foot and started to go across. I did not see any of the train crew on the side of the train that I was on, nor did I see any brakeman pass. I was standing right there at that space between the engine tender and the coal car where he went through, and I did not see any brakeman pass that space on the opposite side of the train with a lantern in his hand. As soon as I seen Mr. Huffman was caught, I started to the engineer just as fast as I could walk; but the train had already moved that time. The engineer was looking at the fireman and was facing toward the scales away from the mill. He had his back to the mill and was facing north. Mr. Huffman had got on the running board before the train moved, but just as he put his foot on the bumper the train moved; it was just a matter of a few seconds, very few at that."

H. E. Dolan testified:

"The movements of trains is largely by signals. At night we use lanterns, and each brakeman is equipped with a signal lantern. The engineer operates the train, and the brakeman gives him signals for the movement of the train. If they would want to keep the train at rest, they would give the engineer the stop signal, which is just a swinging motion of the lantern. To indicate extreme danger, you give that signal faster, which is called the 'Watch Out' signal; but it is made by the same swing of the lanterns. The stop signal is the final signal. The engineer stops when he gets that signal and does not move it any more until he gets the signal to move. The crew was working by signal on the morning of the accident. It wasn't daylight, and they were working by lantern signals. * * * When a signal is given, the fireman sees it immediately if he is looking, but he has got to repeat that signal in words to the engineer after he takes it. The engineer is right across the cab from the

fireman. All the fireman has to do is to tell him to stop or go. * * * It ought to take five or ten seconds to communicate the signal to the engineer where it has to go through the fireman; that is, if the signal was caught immediately."

R. E. Dolan testified:

"We were all working on the scale side or north side of the track. The cars would be between us and the mill. I did not see anybody going over those cars that morning when we coupled onto the coal car and walked up toward the scales where the scales were and watched them weigh the car. I did not at any time, while I was working on the north side of the track, observe or have my attention called to a man in between the cars. * * * When we coupled onto the coal car, before we got to the oil mill, I walked on down to where the cake car was. I don't know who coupled onto the car of cake. We were all on the tender or going down with the tender and were taking no other cars in with us except this coal car that was in the clear. If Brenham coupled those cars, I walked from the tender down to the cake car and had to walk across that space where Huffman got hurt. I had my lantern with me and could see clear across the space, if I was looking that way. It was not necessarily my duty to look that way. I don't think it was my duty, after the car was coupled on, to look across there. There was no reason to keep a watch out there after the car was coupled on. It is not a part of my duty, as I pass from one part of the train to another, to look through the cars as in switching it isn't. I did not see this man in there between those cars. I don't know where he was at. I didn't see him."

The entire train crew testified that they did not see Huffman between the cars and did not know that he was between the cars until after the injury, when their attention was called to him where he was sitting on the ground on the north or scale side of the train. This is all of the testimony shown in the record which is material on the question of discovered peril.

For a diagram showing the location of the mill, scales, and premises, reference is had to the opinion of the Court of Civil Appeals, 61 Tex. Civ. App. 200, 130 S. W. 195.

Doremus, Butler & Henderson, of Bryan, and Fisher & Fisher, of Austin, for plaintiffs in error.

J. W. Garner, of Rockdale, T. S. Henderson, of Cameron, and J. L. Lockett, of Ft. Worth, for defendant in error.

SADLER, J. (after stating the facts as above). In the opinion on the first appeal, the Court of Civil Appeals, in passing on the question of whether or not the cause should have been submitted on the issue of discovered peril, said:

"While not intimating any opinion as to the probative force of the evidence on this phase of the case, we think it was sufficient to require the submission of the issue of discovered peril to the jury."

And in the second opinion the court finds that the facts upon the second trial were substantially the same as in the first trial.

In the last opinion, the Court of Civil Appeals seems to base its affirmance upon the rule of stare decisis, and since "the trial court followed directions given in the opinion upon the former appeal in this case, and submitted only the issue of discovered peril," affirmed the judgment.

It becomes necessary to analyze the evidence set out above in order to determine whether or not there was sufficient evidence before the court to authorize it to submit the issue of discovered peril to the jury.

The evidence is undisputed that at the time of the accident there was sufficient light between the coal car and tender for the brakeman to have seen the plaintiff while he was between the cars. Plaintiff says that, at the time he was between the cars, and "after I had placed my left foot on the knuckle or shoulder of this coal car and was pulling myself up—I was up possibly halfway and had pulled my weight up off of my right foot—I saw a brakeman pass by this opening where I was going through on the opposite side of the train." "He had a lantern in his hand, and, as he passed that opening where I was, he had his face turned in my direction, and I caught his eye as he passed by. He was looking in my direction, and I looked in his eyes. His eyes were open, and I saw his eyes."

Dolan, the brakeman, says:

"I had my lantern with me, and I could see clear across the space if I was looking that way. * * * I did not see this man in there between those cars."

[1] Under the evidence, as thus presented, in our opinion, it became a question for the jury to determine as to whether or not the brakeman saw the plaintiff. It is true that there is no direct, positive testimony by the plaintiff that the brakeman, at the time he passed did in fact see him; but plaintiff did testify to circumstances, which, if true, taken in connection with the testimony of the brakeman, might be sufficient to require the jury to determine that fact. Plaintiff says that the brakeman was looking in his direction, that he was close to the place where plaintiff was, that it was perfectly light at that place, that he saw the brakeman's eyes, and that he looked right into the brakeman's eyes. The brakeman says that it was sufficiently light at the place where plaintiff was injured for him to have seen between the cars. In this state of the record, we are unable to say that this issue should not have been presented to the jury. We therefore conclude that, so far as that element in discovered peril is concerned, the evidence justified the court's charge.

There is another element, however, which it becomes necessary to establish before the rule of discovered peril can be invoked in support of plaintiff's cause. That is, whether or not, even though the brakeman saw plaintiff he knew of his perilous position, and could, by the use of every means at his disposal, have prevented the injury. Stating it another way: Although the brakeman may have seen the plaintiff between the cars, may have seen him with his foot on the drawhead, may have known that to be a danger-

ous position and perilous to the plaintiff in the event the cars should be moved, did he know that the cars were about to be moved, and did he have time to have prevented the injury by the use of every possible means at his command?

[2] If the circumstances presented by this record are such that reasonable minds might draw a different conclusion respecting the failure of the brakeman to have been able, by the use of all the means at his command, to have prevented the injury, then it becomes a question for the jury to determine upon the facts adduced, and the court should have so presented the matter as to have enabled the jury to determine this issue. However, if, under the facts and circumstances as presented by this record, there is no room for reasonable minds to differ in the conclusion that the injury could not have been prevented by the brakeman after discovery of plaintiff's perilous position, then the court should have resolved the issue against the plaintiff, since the evidence would not be sufficient to meet the legal measure entitling plaintiff to have the jury pass judgment upon it. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

If there is any room for ordinary minds to differ as to conclusion to be drawn from the facts and circumstances in this record, then the court would not have been authorized to take the case away from the jury; on the other hand, if the evidence is of such character as that all ordinary minds will unite upon the proposition that the brakeman could not have prevented the injury by the use of all the means at his disposal, then the court should not have submitted the issue to the jury. Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S. W. 399; T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Cowles v. M., K. & T. Ry. Co., 96 Tex. 24, 67 S. W. 1078, 69 S. W. 541; M., K. & T. Ry. Co. v. Eyer, 96 Tex. 72, 70 S. W. 529.

Plaintiff testified on this trial that, when he started to go through between the engine tender and the coal car, and was pulling himself up, and about the time he was pulling himself up with all his weight on his left foot, the cars moved, causing his foot to slip off this knuckle; that he was possibly halfway up and had pulled his weight off of his right foot when he saw the brakeman pass the opening on the opposite side of the train; that the cars moved about six inches; that it was not very long after the brakeman passed before he received his injury; that the brakeman, according to his judgment, had time to have taken something like four steps.

He states that he was trying to get over there to weigh the car just as quick as possible; that he had got up with his weight on his left foot, which was on the knuckle of the coupler, when they made the move; that he could not have been there as long as a couple of seconds; it was done on the instant; that it was but a short time from the time he put his foot on the running board of the tender and pulled himself up until his foot was caught.

He states that he was pulling himself up to go over on the other side as the brakeman passed; that he had just raised his right foot, making an effort to step over, but had not got up in a standing position at all when the cars moved; that he could not say how long the man was under his observation, possibly a second; that he just saw him as he passed by that open space. He testified that he stepped on the tender of the engine with his right foot, placed his left foot on the drawhead, and, as he started to pull himself up, his left foot slipped down between the drawhead and part of the car, and at the same time the train moved a few inches, catching his foot and mashing it; that just before his foot was caught he saw the brakeman pass toward the scales on the opposite side of the train.

Taking the testimony as strongly as permissible in behalf of the plaintiff, and it shows that when plaintiff stepped with his right foot on the running board of the tender, took hold of the handle bars on either side, placed his left foot on the drawhead between the tender and the coal car, had begun to pull himself up by his arms, had relieved the weight from his right foot, and while in the act of pulling himself up, the brakeman passed the open space; that while in this position, and before he was able to pull himself to an erect position on the drawhead, the train moved, mashing his foot.

From the time plaintiff saw the brakeman (assuming that the brakeman also saw plaintiff), there only remained that length of time intervening between the moment the brakeman saw the plaintiff to the moment the car moved (which under the testimony is shown to have been before the plaintiff had lifted himself to an upright position) in which the brakeman could have acted in an effort to prevent the injury.

There is an entire want of evidence showing that, at the time the brakeman is claimed to have seen plaintiff, he then knew that the train was to be moved. There is no evidence showing when the brakeman ascertained that the train was to be moved, and the only evidence on that question is the testimony which shows that the brakeman was near the scales when it was moved.

According to the plaintiff's positive testimony, it was just a second from the time he stepped upon the running board of the tender until he received the injury. However, he shows that, when he saw the brakeman pass, he then had his left foot on the knuckle or shoulder of the coal car and was pulling himself up; having removed the weight off of his right foot. When the cars moved, causing his foot to slip off of the knuckle, he had his left foot on the knuckle and was pulling himself up, but had not reached an upright position on the drawhead.

Assuming that the brakeman saw him in the position described by plaintiff at the time he passed, did he know that the train was about to be moved, and did 'he have the time, from that moment until the train did move, in which to have acted in an effort to prevent plaintiff's injury?

Without going into the field of conjecture, is it reasonable to conclude from this record that Dolan, the brakeman, knew of the necessity of moving the train, or the purpose to do so? We think not. A reasonable assumption, based on the evidence, is that the passing of the brakeman and the movement of the train were in such juxtaposition in relation of time as to have rendered it improbable that the brakeman did know that the train was to be moved.

Should it be assumed that the record raises the issue of Dolan's knowledge at the time that the train was to be moved, yet, is it not apparent that knowledge on his part of plaintiff's peril and the movement of the train were so near simultaneous as to lead to the very reasonable conclusion that he was powerless to have prevented the injury?

We are of opinion that if the brakeman, at the time, had been in possession of all the information necessary to have demanded action on his part, there did not remain time in which he could have prevented the train from moving by the use of any of the means which might have been in his power.

Assuming that the brakeman should have immediately called to the fireman not to move or to hold the train stationary or to give him any character of warning, it would have been necessary for the fireman to have communicated this to the engineer, and it is not reasonable to assume that this could have been done without the period of time intervening between the time plaintiff saw the brakeman and the movement of the train.

[3] It must be a matter of common knowledge that some time must intervene between the receiving of an impression by one and its communication to another, whether such communication be by word of mouth or by some other means. We are therefore of the opinion that, measured by the legal rule, the evidence in this record is not sufficient to raise the issue of the failure of the brakeman to utilize the means in his hands or possession or at his command so as to have prevented plaintiff's injury.

[4] The evidence, therefore, being insufficient to raise the issue of whether or not the brakeman knew that the train was likely to move and that he could have prevented it from moving, the court was not authorized to submit the issue of "discovered peril" to the consideration of the jury. Having submitted the issue, for the reason hereinbefore given, we are of the opinion that the facts and circumstances are insufficient to support the verdict and judgment in this cause.

The plaintiff in error also complains with reference to the admission in the evidence of the ordinances of the city of Rockdale.

[5] We are inclined to the opinion that, in view of the record, this evidence was not admissible. Since, however, the court withdrew it from the consideration of the jury, the error became immaterial. The other matters complained of are not deemed of sufficient importance to require consideration.

We are therefore of opinion that the judgment of the Court of Civil Appeals and of the district court should be reversed. It appearing that the evidence has been fully developed, judgment should be rendered in favor of defendants below.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.