### LANCASTER et al. v. HUNTER.
### (No. 9145.)

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 1, 1919.)

1. RAILROADS ⚙==282(5)—EVIDENCE INSUFFICIENT TO SHOW NEGLIGENCE IN OPERATION OF CAR COLLIDING WITH CAR BEING UNLOADED.

In an action against railroad receivers by the employé of a third party for personal injuries sustained when the box car in which he was unloading brick was struck by another car, evidence *held* not to support a finding of defendant's negligence.

2. PLEADING ⚙==280—CONTRADICTORY STATEMENTS AND SUPPLEMENTAL ANSWER CANNOT DESTROY PLEA OF GENERAL DENIAL.

In action by an employé of a third person for injuries when another box car struck the one in which he was unloading brick, wherein defendant answered by general denial, etc., the allegations of its supplemental answer, to the effect that plaintiff had accepted compensation under Workmen's Compensation Act from a surety company with which defendant had made a settlement, could not be used to nullify the plea of general denial, in view of the statute permitting defendant to plead as many several matters of law or fact as he may choose, and one plea, though contradictory in terms, cannot be used to destroy another.

3. MASTER AND SERVANT ⚙==354—ACCEPTANCE OF COMPENSATION BY EMPLOYÉ DOES NOT BAR ACTION AGAINST THIRD PARTY.

Notwithstanding Workmen's Compensation Law 1917, pt. 2, § 6a (Vernon's Ann. Civ. St.

Supp. 1918, art. 5246—47), declaring that an injured employé of a subscriber within the terms of the act may not proceed both against the association and a third party liable to him because of negligence, the receipt of compensation by plaintiff, an employé of a third party subscriber from a surety company for injury by defendant railroad, and his assignment of so much of recovery as might be had or would indemnify it, did not absolutely bar his action against railroad.

4. MASTER AND SERVANT ⚙==389—EXTENT OF RIGHT OF SURETY WHO HAS PAID COMPENSATION TO SUBROGATION UNDER WORKMEN'S COMPENSATION ACT DEFINED.

Under Workmen's Compensation Law 1917, pt. 2, § 6a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—47), the right of a surety corporation to be subrogated to rights of injured employé after its payment of compensation is given for the surety's benefit, and its suit against a negligent third party is for its benefit to extent of compensation paid by it, and for benefit of injured employé for any excess, so that the intervention of a surety company which had so paid compensation to an employé claiming damages from a third party should not be dismissed.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by J. W. Hunter against J. L. Lancaster and others, receivers of the Texas & Pacific Railway Company, with intervention by the Southern Surety Company. Intervener dismissed on its own motion and verdict and judgment for plaintiff, and defendants appeal. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner and George Thompson, Jr., all of Ft. Worth, for appellants.

J. W. Kearby, of Ft. Worth, for appellee.

CONNER, C. J. Appellee, J. W. Hunter, instituted this suit on April 12, 1918, against J. L. Lancaster and Pearl Wight, receivers of the Texas & Pacific Railway Company, seeking to recover damages in the sum of $2,995 on account of personal injuries received by said Hunter as a result of being injured in a box car near Camp Bowie, Ft. Worth, Tex., on October 3, 1917.

On June 8, 1918, the Southern Surety Company intervened in said suit, alleging that it was a duly constituted corporation with charter powers and with a permit from the state of Texas to insure the liability of employers of labor under the Workmen's Compensation Act of the state of Texas, and was so constituted and authorized on the date of Hunter's injuries and prior thereto; that at the date of Hunter's injuries he was an employé of a partnership composed of Butcher and Sweeney; that the partnership named, by reason of their line of business and number of men employed by them, was

⚙==For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

within the terms of the Workmen's Compensation Law and authorized and permitted by its terms to become a subscriber within the meaning of the act by taking out a compensation policy with some insurance company authorized and permitted to write such insurance; that interveners, prior to the date of the injuries, had executed and delivered to said Butcher & Sweeney a policy in manner and form as provided by the act referred to, whereby it insured said firm against the liability, and agreed to pay the compensation provided for by such Workmen's Compensation Act; that, while said compensation policy was in full force and effect, the plaintiff, while so acting as an employé of Butcher & Sweeney and was acting within the scope of his employment, was injured through the gross negligence of said receivers, their agents and servants. The interveners then set forth the circumstances of plaintiff's injuries and of the negligent acts of the receivers, their servants and employés relied upon, and further alleged that the interveners were compelled to and had paid to the said plaintiff, Hunter, for the compensation under the Workmen's Compensation Law, the sum of $600, and would most likely in the future be compelled to pay to said Hunter other and further sums of money in addition to certain hospital and physician's bills mentioned. Intervener further alleged that, under and by virtue of the Workmen's Compensation Law referred to, it was subrogated to the rights and causes of action of the said Hunter against the receivers to an amount necessary to reimburse it on account of all payments made to Hunter and for all payments which might lawfully thereafter be made, because of which it was charged that the intervener was entitled to intervene and sue in the cause against the defendant on its own accounts as well as for the said plaintiff, J. W. Hunter.

It was further alleged by the intervener that by reason of the serious and permanent injuries received by plaintiff, as alleged through the negligence of the defendants, said plaintiff had been damaged in the sum of $2,995, and the intervener prayed for judgment in its own behalf as well as in the behalf of said Hunter.

The defendant receivers answered by a general denial, a plea of contributory negligence on the part of Hunter, and further that Hunter at the time of the accident was working for Butcher & Sweeney, contractors, who carried compensation insurance in the Southern Surety Company of Denison, Tex., and that Hunter had elected to collect his compensation from said surety company, and that therefore he had no cause of action against the defendants. A few days later, the defendant receivers filed what is termed a "supplemental petition," in which it was alleged, in substance, that a settlement had been made with the Southern Surety Company whereby the said surety company had agreed to accept the sum of $500 from the receivers "in settlement of any liability on the part of said defendants arising out of the injuries alleged to have been sustained by plaintiff and for which this suit was brought."

Thereafter, on July 23d, intervener was dismissed from the action on its own motion. The case was thereupon submitted to the jury as between the receivers and the plaintiff upon special issues, which having been answered favorably to plaintiff, a judgment was entered in his favor for the sum of $2,995, from which judgment the receivers have appealed.

The receivers have presented by appropriate assignments two contentions: First, that the evidence on the issue of the receiver's negligence, as alleged, is wholly insufficient to support the verdict; and, second that it having been shown that the plaintiff, Hunter, had accepted compensation from the Southern Surety Company, under the compensation act referred to in the pleadings, he (Hunter), under the terms of said act, was not empowered to sue.

[1, 2] The evidence is to the effect that the plaintiff, Hunter, on the date of his injuries was at work in a box car taking down brick which had been loaded thereon, placing the same in a wheelbarrow which was to be operated by another employé in wheeling the brick out of the car down upon the ground, and that while so engaged a box car, on the track upon which the car loaded with brick was standing, was propelled or moved with force against the car loaded with brick, and thereby the brick in the loaded car was thrown down and upon plaintiff, injuring him to an extent and in particulars not necessary to recite. No witness, however testified what it was that started or propelled the moving car against the car in which plaintiff was at work. The plaintiff was inside of the car and knew nothing of the impending collision until it occurred. All other witnesses testified to the same effect except one, a Mr. Weekly, who testified that some one called out, "There," and that just the minute the word had been spoken he dropped his wheelbarow in the door of the car, grabbed the facing of the car door in one hand, and peeped his head around the car door and saw the other car—"big red car, a box"—in the act of hitting the car within which the plaintiff and others were working. No witness testified whether the track upon which the collision occurred extended east, west, north, or south, and no witness testified that they saw or heard a switch engine operating near by. No witness testified to the brands upon the cars, as to whether they were cars of the Texas & Pacific Railway Company or of some other

railroad; the effect of the testimony in point being merely that the collision occurred on the switch or side track from which the government unloaded wood at Camp Bowie.

If it could be said that we judicially know that the Texas & Pacific Railway Company had side and spur tracks from which wood and other material intended for Camp Bowie was unloaded, we would be required to also judicially know that another railway crossed the Texas & Pacific Railway at approximately right angles and extending near the location of the military camp mentioned.

Appellee urges that the deficiencies in the above indicated are supplied by the admissions made in behalf of the receivers, and by the fact that one Dr. J. M. Givens testified to the effect that he was a local surgeon for the Texas & Pacific Railway Company and "at the instance of the railway company," accompanied by Mr. Hunter's physician, made a physicial examination of the plaintiff. It was not shown, however, that any one in authority had directed Dr. Givens to make the examination, nor was the purpose which prompted the action on the part of the physician referred to explained, nor was his act accompanied with any admission of liability for Mr. Hunter's injuries. It further appeared in the testimony that the defendant offered in evidence a contract of settlement with the Southern Surety Company, whereby the insurance company agreed to accept the sum of $500 in satisfaction of any liability on the part of the defendants arising out of the injuries to the plaintiff, alleged in his petition. Appellee further insists that the special plea set forth in the defendants' first supplemental answer, hereinbefore referred to, to the effect that the plaintiff had accepted compensation under the Workmen's Compensation Act from the Southern Surety Company with which the defendants had made a settlement, constitutes an admission of liability on the part of the receivers.

The settlement with the Southern Surety Company was evidently but a compromise and by no means sufficient to establish the truth of the allegations in the plaintiff's petition, nor can the allegations in the supplemental answers be used to nullify the effect of the defendants' plea of general denial. Our statutes provide, in effect, that a defendant may plead as many several matters of law or fact as he may choose, and one plea, contradictory though it may be in terms, cannot be used to destroy another. See Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Bauman v. Chambers, 91 Tex. 108, 41 S. W. 471.

We conclude that the evidence fails to support the verdict and judgment on the necessary issues of the defendants' negligence. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Texas Loan Agency v. Fleming,

92 Tex. 458, 49 S. W. 1039, 44 L. R. A. 279; First State Bank v. Jones, 107 Tex. 623, 183 S. W. 874; Southern Kansas Ry. Co. v. Shinn, 207 S. W. 87; Freeman v. Huffman, 206 S. W. 819; Mills v. Mills, 206 S. W. 100; St. L. S. F. Ry. Co. v. West, 174 S. W. 287; Bock v. Fellan, 173 S. W. 582; McKinney Ice Co. v. Montgomery, 176 S. W. 767; Cobb v. Rodriguez, 209 S. W. 196.

[3, 4] There yet remains for disposition, however, the question arising by reason of the fact that the plaintiff was shown to have received compensation for his injuries from the Southern Surety Company. It was shown without dispute that the plaintiff's employers were, under the terms of the liability act "subscribers" within the meaning of the law, and that thereunder the plaintiff was entitled to and in fact did receive from the Southern Surety Company, which had duly indemnified the plaintiff's employers, several hundred dollars in weekly payments. The original act, together with its supplemental amendment is voluminous and not in every particular clear, but section 6a of part 2 of the latest law on the subject (see General Laws of 1917, p. 285 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246 —47]) thus reads:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employé may at his option proceed either at law against that person to recover damages or against the association for compensation under this act, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under the provisions of this act; if compensation be claimed under this act by the injured employé or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employé in so far as may be necessary and may enforce in the name of the injured employé or of his legal beneficiaries or in its own name and for the joint use and benefit of said employé or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employé or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employé or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employé or his beneficiaries and the approval of the board, upon a hearing thereof."

Notwithstanding that it is thus declared that an injured employé of a subscriber, within the meaning of the terms of the Work-

men's Compensation Act, may not proceed both against the association and a third party liable to him because of negligence, we do not feel prepared to hold that the plaintiff's suit now under consideration has been absolutely barred by the proceedings. The right of the association, or of a surety corporation in the same attitude under the provisions in the act, to be subrogated to the rights of the injured employé, is evidently given for the benefit of the indemnifying corporation. The section quoted does not destroy or abrogate plaintiff's cause of action. The third party wrongfully causing the injury may yet be sued, and when sued by the indemnifying corporation it is for the benefit of the indemnifying corporation to the extent of the sums advanced to the employé by it and also for the benefit of the injured employé for any excess. The act evidently contemplates that the injured employé is the real beneficiary in cases where the damages exceed, as may often happen, the amount received by the employé from the indemnifying association. Numerous authorities might be cited to the effect that in equity the real beneficiary may always be permitted to sue where the party having the mere legal title or right fails or refuses. See Trust Co. v. Merritt (C. C.) 54 Fed. 55, and cases therein cited.

It is true that it was not only shown without dispute, as stated, that the plaintiff received several hundred dollars compensation, but appellee also offered in evidence an assignment by Hunter to the Southern Surety Company, but the assignment did not purport to transfer the plaintiff's cause of action if any he had, against the receivers. It purported to assign only such part of any recovery that the Southern Surety Company or the plaintiff, Hunter, might recover against the Texas & Pacific Railway Company or its receivers as was necessary to indemnify the surety company for all sums advanced by it to Hunter and for hospital and doctor's fees, etc. Nor was it shown that the settlement made with the Southern Surety Company had been agreed to by the plaintiff in the suit, or that it had been approved by the Industrial Accident Board, provided for in the act. The assignment therefore gave nothing more than the law itself.

We therefore conclude that the mere fact that the plaintiff, Hunter, accepted compensation in part from the surety company and assigned to the surety company so much of any recovery as might be had or as would indemnify it, does not constitute an absolute bar to the action by plaintiff against the receivers. The question goes rather to the qualification of the plaintiff to sue than to the merits of the action. In other words, the plea setting up this matter was not properly one in bar, but one in abatement. The intervening surety company should not, therefore, have been dismissed from the suit, or having been so dismissed, and the plaintiff, court, and defendants all consenting thereto and proceeding with the trial without objection, as it thus appears in the record before us, the plaintiff is not barred of his action against the receivers.

The case does not seem to have been fully developed, and we hence conclude that on the whole we should reverse the judgment and remand the cause, rather than here render judgment for appellants.