## CITY OF SAN ANTONIO v. BURKE et al.
### No. 9378.

Court of Civil Appeals of Texas.
San Antonio.
Nov. 15, 1933.

W. C. Davis, T. D. Cobbs, Jr., and Jack Davis, all of San Antonio, for appellant.

Terrell, Davis, Hall & Clemens, of San Antonio, for appellees.

SMITH, Justice.

In the exercise of its power of eminent domain, the city of San Antonio procured the condemnation of certain real property belonging to P. A. Astoria, to whom duly appointed special commissioners awarded damages in the amount of $7,500. In pursuance of familiar statutory provisions, the city deposited said sum in the registry of the county court by paying over the same to Jack R. Burke, then county clerk of said county, through voucher carrying upon its face the following memorandum: "City Warrant No. 137, San Antonio, Texas, Feb. 3, 1930. The City Treasurer will pay to County Clerk-Bexar County, Texas, for account of P. A. Astoria $7,500.00 City of San Antonio $7500&00—Cts.—Dollars out of any moneys in the City Treasury not otherwise appropriated. Council Appropriation No. 425 dated January 27, 1929 For Damages assessed by the Special Commissioners in condemnation proceedings to acquire land out of Lot 9, C. B. No. 135, for the widening of Cameron St. Account of Street Opening & Widening Fund of 1928 C. M. Chambers; Mayor, City of San Antonio Attest: Fred Fries, City Clerk. Payable at Frost National Bank." The voucher was indorsed by Burke, through his duly authorized agent, as follows: "County Clerk, Bexar County, Texas. (For account of P. A. Astoria) Jack R. Burke by Sybil Hodges," and deposited with the City-Central Bank & Trust Company of San Antonio, which collected the amount and credited it to the general account of "Jack R. Burke, County Clerk." Burke thereafter withdrew said fund on his checks as county clerk, and, it is alleged, wrongfully applied it.

Subsequently, said bank and trust company failed and its assets were taken over by the state banking commissioner, until the sale thereof to its successor, the South Texas Bank & Trust Company. The commissioner, however, retained certain sums with which to pay off certain unliquidated claims against the City-Central concern.

The city brought this action against the banking commissioner for an injunction restraining him from paying out the balance of said funds until the asserted right of the city in the fund in question is finally adjudicated. From an order denying that relief, the city has appealed.

■ The question presented by the appeal is, simply, whether the bank, with the knowledge conveyed to it by the memorandum in said voucher, was required to segregate said fund and pay it out only for the purposes of the trust impressed upon it.

We are of the opinion the bank was under no such duty; that it was warranted under the facts of the case in paying out said fund upon the order of the county clerk, as was done.

■■ The fund was deposited with the county clerk under the provision in the condemnation statute that the condemnor—(the city of San Antonio in this case) "shall pay to the

defendant [Astoria] the amount of damages awarded or adjudged against it by the commissioners, or deposit the same in money in court, subject to the order of the defendant. * * * " Article 3268, subd. 1, R. S. 1925.

In view of Astoria's appeal from the award of the commissioners, the city was required under said provision to "deposit" the amount of the award "in money in court, subject to the order of" Astoria.

Strictly construed, the city was required to deposit the amount in actual "money in court," but such deposit with the clerk of the court satisfied the requirement. Ackerman v. Huff, 71 Tex. 317, 9 S. W. 236; Roberts v. Powell, 22 Tex. Civ. App. 211, 54 S. W. 643.

The city chose to make the deposit by voucher (instead of in cash) drawn against its depository, the Frost National Bank. The clerk deposited this voucher with the City-Central Bank, to be collected by the latter and credited to the account therein of "Jack R. Burke, County Clerk," which was done. Later the fund was withdrawn from the latter bank upon the order of "Jack R. Burke, County Clerk," who, it is alleged, thereupon misappropriated the whole amount.

■ The county clerk was the proper custodian of the fund. It was proper for the city to pay it over to him, and it thereupon became his duty to disburse it, under the direction of the county court.

The clerk, having proper custody of the fund, had the power to direct the bank to deposit it to his account as county clerk. And when deposited in such account, it could be withdrawn only upon the order of the county clerk.

The memoranda in the face of the voucher was not a limitation upon the conduct of the bank, but was for the benefit, information, and guidance of the drawer and payee. Steere v. Bank (Tex. Civ. App.) 266 S. W. 531, and authorities there cited.

In such situation the duty of the bank was, simply, to pay out the fund only to the order of the county clerk. The only restriction resting upon the bank was the obligation not to knowingly aid the clerk in misapplying the fund, or divert it to the payment of debts owing to the bank. The bank was under no duty, nor did it have the power, to pursue the fund in the hands of the clerk, its proper custodian, to see that it was properly distributed. The bank could rest upon the legal presumption that the clerk would do his duty under the law.

■ The general rule is well stated in 3 R. C. L. p. 549, § 177: "In the absence of notice or knowledge, a bank cannot question the right of a customer to withdraw a fund, nor refuse the demands of the depositor by check; and if money is deposited by one as trustee, the depositor as trustee has the right to withdraw it, and, in the absence of knowledge or notice to the contrary, the bank has a right to presume that the trustee will appropriate the money, when drawn, to a proper use. The only obligation of the bank is to honor the checks that are duly drawn against the account in the form in which it is kept. To charge banks with the duty of supervising the administration of trusts, when, in the due course of business, they receive checks and drafts payable to and properly indorsed by trustees in their trust capacity, would place an unreasonable burden upon the banks, and seriously interfere with commercial transactions. The law imposes no such duty upon them. The imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank."

The rule would be different, it seems, where the bank knowingly credits a trust fund to the account of the trustee, individually, and permits the latter to withdraw the fund upon his individual order. Id., §§ 177, 178. Such is not the case here, for the account was deposited to the credit, and withdrawn upon the order, of the trustee as such.

The general rule, embracing the foregoing conclusions, is in force in this state. 6 Tex. Jur. p. 244, § 109, and authorities there collated. That rule is well stated in U. S. Fidelity & Guaranty Co. v. Adoue, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667: "The principles governing are clearly stated in the opinion of the Chief Justice in the case of Coleman v. Bank, 94 Tex. 607, 608, 63 S. W. 867, 86 Am. St. Rep. 871, with copious citations from leading authorities. From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor the checks and incurs no liability in so doing as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give it the right to institute an inquiry into the conduct of its customer in order to protect those for whom it may hold the fund, but between whom and the bank there is no privity."

The judgment is affirmed.