**DUNAGAN v. BUSHEY et al.**

No. 12477.

Court of Civil Appeals of Texas.
Galveston.

April 23, 1953.

Merrill & Scott and Sam R. Merrill, of Houston, for appellant.

Boyles & Billingsley and M. U. S. Kjorlaug, Houston, for appellee First Nat. Bank in Houston.

George W. Eddy, Houston, for appellees C. W. Bushey, J. B. White and Harry L. Hill.

MONTEITH, Chief Justice.

This action was brought by appellant Everett Dunagan for himself and on behalf of the stockholders and creditors of Tem-Trol, Incorporated, a Texas corporation, in which he was a stockholder, seeking recovery from C. W. Bushey, J. B. White, and Harry L. Hill, who were engaged in promoting and incorporating Tem-Trol, Incorporated, and the First National Bank in Houston of the sum of $18,025. He alleged that he had purchased from appellees White and Bushey stock of Tem-Trol, Incorporated, of par value of $5,000, which had been subscribed by them and paid for with checks totaling that amount, which were subsequently used for the benefit of the corporation; that the application for said charter showed an authorized capital stock of $35,000 of which $18,000 was stated to have been paid in cash.

Appellant alleged that Tem-Trol, Inc., was chartered in April, 1948, and that appellees C. W. Bushey, J. B. White and Harry L. Hill were named as its first board of directors, and that he was approached by appellee White, relative to buying stock in the proposed corporation. The record reflects that prior to March 30, 1948, appellees Bushey and White had negotiated a loan from the First National Bank in Houston in the sum of $18,000, to be deposited to the credit of the corporation and to be used as the necessary cash payment for securing such charter; that appellee bank issued a duplicate deposit slip in that amount for use in securing such amount. Appellant alleged that appellee bank had knowledge of such plan or was in possession of sufficient facts to put it on inquiry with reference thereto; that appellees Bushey and White later withdrew $18,025 from the corporate funds by check payable to themselves and used the same to pay their note to appellee bank. He alleged that appellee bank had knowledge of such fraudulent plan and that appellee bank had knowledge of the unlawful plan to withdraw such funds that left the corporation without sufficient funds to enable the corporation to proceed with the business for which it was incorporated.

At the conclusion of the trial before a jury, the trial court withdrew the case from the jury and the trial court rendered judgment that appellant take nothing by his suit.

The record shows that appellant was present and interposed no objection or protest at the stockholders meeting of April 26, 1948, when he was advised of the loan from the bank; and at which meeting the action of the stockholders meeting of April 8, 1948, adopting a resolution which designated the First National Bank in Houston as the depository for Tem-Trol, Inc., and which authorized withdrawals by checks signed by C. W. Bushey and J. B. White, was ratified.

It is undisputed that appellant was approached by appellee White relative to buying stock in the proposed corporation, that he was informed of the nature of the business the proposed corporation would engage in.

On July 21, 1950, a judgment was rendered by one of the district courts of Travis County, dissolving the corporation for its failure to pay the franchise tax due the State.

Appellant relies on 15 points of assigned error, in which he contends that since the evidence shows that the individual appellees caused the check of the corporation for $18,025, to be drawn in favor of the appellees White and Bushey, the corporation

did not receive full and adequate consideration, that such conduct was in violation of their trust as such incorporators and directors, and that such check was invalid; and appellant contends that since appellee First National Bank in Houston accepted the check of the corporation payable to appellees White and Bushey for $18,025, in payment of their note, appellee bank became liable to the corporation for that amount regardless of whether or not the bank or its representatives actually knew, or had notice, of the fact that such check was wrongfully issued. He contends that the bank, having loaned the sum of $18,000 to appellees, and having issued its duplicate deposit slip for that amount to be used in securing the corporate charter and then used the money thus received to pay appellees' note to the bank, that the bank remained liable to the corporation for its funds so withdrawn, and that the individual appellees and the appellee bank were jointly and severally liable to the corporation for the sum of $18,025, and that the trial court erred in overruling the alternate motion of appellant for an instructed verdict. Appellant contends that the court erred in failing to submit to the jury as a controverted fact issue the question of whether the officers and representatives of appellee bank knew or should have known at the time it issued its duplicate certificate of deposit for $18,000 of the purpose of the individual appellees to sell to the corporation, when organized, properties of questionable value for the amount of their note to the bank and then use that money to pay said note.

In the case of Waco Drug Co. v. Hensley, Tex.Com.App., 34 S.W.2d 832, in which allegations of fraud, misrepresentation, concealment or conspiracy were charged, the court set out the rule laid down by the Supreme Court in the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, that it was the duty of the court to instruct a verdict if its probative force was so weak that it only raised a mere surmise or suspicion of the existence of the fact sought to be established and that such testimony in legal contemplation fell short of being any evidence, and that it is the duty of the court to

determine whether the testimony has more than that degree of probative force.

The rule announced in the case of Joske v. Irvine, supra, has been followed in the cases of Texas Loan Agency v. Fleming, 92 Tex. 458, 49 S.W. 1039, 44 L.R.A. 279; Nordyke v. Wright, Tex.Civ.App. 11 S.W. 2d 385; Wills v. Central Ice & Cold Storage Co., 39 Tex.Civ.App. 483, 88 S.W. 265; Harpold v. Moss, Tex.Civ.App., 106 S.W. 1131; Missouri, K. & T. R. Co. v. Williams, Tex.Civ.App., 117 S.W. 1043; Dayton Lumber Co. v. Stockdale, 54 Tex.Civ. App. 611, 118 S.W. 805; Advance-Rumely Thresher Co. v. Moss, Tex.Civ.App., 213 S.W. 690; Kirby Lumber Co. v. Boyett, Tex.Civ.App., 221 S.W. 669; M. H. Thomas & Co. v. Hawthorne, Tex.Civ.App., 245 S.W. 966; Houston v. Holmes, Tex.Civ. App., 262 S.W. 849; Blackwell v. Ship Channel, etc., Tex.Civ.App., 264 S.W. 223.

It is, we think, the settled law in this State that a bank is charged with liability for misappropriation of its depositor's funds only when it has actual knowledge of the misappropriation and acts in bad faith.

In this case there is no evidence in the record that the appellee bank acted in bad faith or that it possessed actual knowledge of any misconduct or intended misconduct on the part of appellees, C. W. Bushey, J. B. White and Harry L. Hill.

In connection with appellant's charge of fraud on the part of appellees, there is no evidence that the appellee bank committed an unlawful act and by its act effected an unlawful purpose.

The ledger sheet of this account in the bank shows that there was no restraint put upon the account and that it was handled by the bank in the usual and customary manner.

In the case of American Surety Co. of New York v. Waggoner Nat. Bank of Vernon, 5 Cir., 83 F.2d 99, it was held that the Bank was bound to honor the checks in the absence of adequate knowledge or notice that the funds were being unlawfully withdrawn. In the cases of City of San Antonio v. Burke, Tex.Civ.App., 65 S.W.2d

408; State Nat. Bank v. Reilly, 124 Ill. 464, 14 N.E. 657, it was held that though a bank is liable for loss of trust funds deposited with it when, having knowledge of the character thereof, it acts in bad faith by conniving with the fiduciary in converting them, the test is whether the bank acts in good faith, and that integrity and good faith are exacted, but that the transactions of banks should not be clogged and hampered by unreasonable burdens of supervision over the activities of its depositors. If the bank does not participate in the fraud with knowledge that a breach of trust is intended, or does not know of suspicious circumstances which render the bank guilty of bad faith in failing to inquire further, the bank is not liable for honoring a fiduciary's check payable to himself.

In the case of City of San Antonio v. Burke, supra [65 S.W.2d 409], it was held that a bank is not charged with the duty of policing its depositor's accounts and that to charge the bank with such duty of supervision " '* * * would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank.' "

In the instant case there is no evidence in the record and none was presented that appellee bank acted in bad faith or that it had such notice as would constitute bad faith in the transaction.

■ It is, we think, the settled law in Texas that the ordinary rule of notice does not apply to the purchaser of a negotiable instrument for a valuable consideration. The test in negotiable instrument cases is whether the parties acted in good faith and were not negligent.

Appellant relies on the case of Dockstader v. Brown, Tex.Civ.App., 204 S.W.2d 352, in which certain mineral interests were sold by an agent acting under a power of attorney executed by his sister. The purchase price was paid by check payable to the First National Bank of Bowie. The bank actually distributed the funds and after payment of transfer costs and a lien on the land, the balance of the check was deposited in the bank in the name of "Audrey Brown Reese, R. L. Brown, Jr., Attorney-in-Fact". On the same day R. L. Brown, Jr., drew a check against the account payable to the bank in payment of his personal note. This was not the situation in the instant case.

■ The record shows that appellant did not request that the alleged issues assigned as errors be submitted to the jury and that he waived their submission and cannot now be heard.

■ Under his fifth point of error appellant contends that the question as to whether appellee bank would have had the right to accept the corporate check in favor of appellees White and Bushey in payment of the note of appellees in the absence of sufficient facts to put it on inquiry with respect thereto, that the evidence was sufficient to raise a fact issue and that the same should have been submitted to the jury. This contention cannot, we think, be sustained for the reason that the action complained of was ratified by the acquiescence of appellant and the stockholders of the corporation.

It is undisputed that neither appellant nor the other stockholders made any objections to the actions taken at the stockholders' meeting on April 26, 1948, when the action involved was discussed.

W. A. Kirkland testified that he made the loan for the bank without security.

■ The rule of law approved in this State relating to this point is announced in the case of Pruitt v. Westbrook, Tex.Civ. App., 11 S.W.2d 562, 565, in which it is held, " * * * that, where the actions or transactions of the directors are involved, and the claim is made that the directors were personally interested in consummating the deal against which an attack is made, that such transaction or actions may be ratified by a vote or the acquiescence of all the stockholders, or even a majority thereof, if such actions or transactions are not inhibited by the common law as against public policy or not inhibited by statute."

■ In the instant case the loan transaction involved was not violative of any

statutory law. There is no statute which prohibits or frowns upon individuals borrowing money with which to pay for their stock subscriptions. The transfer of properties and assets to the corporation was not violative of any law and is a common, customary practice in the incorporation of associations.

Under their 6th counter-point appellees contend that there is no authority under law, either statutory or judicial, for plaintiff's suit for recovery of the purchase price of his stock subscription under the facts and evidence presented in this case.

They cite the case of Stinnett v. Paramount-Famous Lasky Corporation of New York, Tex.Com.App., 37 S.W.2d 145, 150, in which the Commission of Appeals held that, " * * * the rule is settled in this state that a. stockholder, merely as such, cannot have an action in his own behalf against one who has injured the corporation, however much the wrongful acts have depreciated the value of his shares."

Appellant's charge of fraud is, we think, not sustained by the evidence presented in the record.

Counsel for appellant urges that the transaction of the incorporators herein involved was fraudulent in its inception, citing Freudenstein v. Valley State Bank, Tex. Civ.App., 68 S.W.2d 567. In that case the Valley Drug & Sundries Company, Inc. decided to increase its capital stock $30,000. In order to do so, it was necessary to present evidence to the Secretary of State that one-half of its stock had been paid for in cash. The Drug Company first wanted to borrow the money from the Valley State Bank, but the bank refused to let the company have the money. Whereupon, it was agreed that if three other stockholders would sign a note for the sum of $15,000, Holland, as vice-president of the bank, would issue a deposit slip showing a trust fund deposited in the bank in the sum of $15,000, which deposit slip could be attached to the application for the amended charter with increased capital stock. After the amended charter had been granted, the deposit slip would be cancelled and the note marked paid and returned to the signers.

This scheme was carried out. In that case, the bank, through its vice-president, who was also a stockholder in the corporation, deliberately entered into the transaction and all parties intended that there should be no consideration. However, in that case, the trial court instructed a verdict for defendants and entered judgment that plaintiff take nothing. The appellate court left the parties where it found them.

Under their 8th counter-point appellees contend that the evidence offered for the purpose of aiding in the construction of a written instrument is not within the prohibition of the parol evidence rule.

The testimony of Mr. W. A. Kirkland, vice-president of appellee bank, objected to by appellant's counsel, in explaining the meaning of the notation placed upon the deposit slip retained by the bank, was not such as to come within the prohibitions of the parol evidence rule for the reason that it was offered to explain the written notation and not to enlarge upon it.

The distinction between evidence offered to add to or detract from a written instrument or writing and evidence offered to explain the meaning of the written words was pointed out by our Supreme Court in the case of Hunt v. White, 24 Tex. 643.

It was also held in the case of Wingate v. Mechanics' Bank, 10 Pa. 104, where parol evidence was admitted to explain short entries in a bank book.

The testimony of Mr. Kirkland in this case merely explained the notation on the deposit slip and did not add to it or detract from it. The testimony was introduced to make the terms there used properly understandable and for this purpose it was admissible.

Since in this case appellant did not present evidence of sufficient probative value to be submitted to the jury, we think the case was properly taken from the jury and judgment rendered by the trial court.

We have carefully considered all points of error presented by appellant in his brief and have found no reversible error therein.

It follows that the judgment entered herein by the trial court must be in all things affirmed.